161 P.3d 596

**STATE of Arizona, Appellee,**

v.

**Daniel James CONNOR, Appellant.**

**No. 1 CA–CR 05–0153.**

Court of Appeals of Arizona, Division 1, Department B.

July 17, 2007.

Terry Goddard, Attorney General By Randall M. Howe, Chief Counsel, Criminal Appeals Section and Cari McConeghy–Harris, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender By Brent E. Graham, Deputy Public Defender, Phoenix, Attorneys for Appellant.

SNOW, Judge.

¶ 1 Daniel James Conner ("Defendant") was convicted of first-degree murder and sentenced to life in prison with the possibility of parole after twenty-five years. On appeal, Defendant argues the trial court erred by denying his pretrial motion for production of the victim's medical records and, at trial, admitting improper other-act evidence. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 On December 11, 2002, Todd T., ("victim"), an intellectually and emotionally challenged young man, was found dead inside his apartment. An autopsy revealed that he had been stabbed or cut at least eighty-four times. The injuries included several incisions to his throat, stab wounds to his back, cuts on his face and arms, the near severance of one finger, and numerous wounds to the chest, at least one of which resulted in the collapse of a lung. The cause of death was loss of blood with a possible component of respiratory failure due to bleeding into the lung cavity.

¶ 3 Blood spots on the victim's clothing and saliva from a cigarette butt found at the scene were matched to Defendant through DNA testing. When questioned by the police, Defendant initially denied being at the victim's apartment or knowing anything about the stabbing. Later in the interview, however, Defendant admitted to the stabbing, but claimed he acted in self-defense.

¶ 4 Prior to trial, Defendant moved to compel discovery of "any and all medical treatment, counseling, psychological and/or psychiatric records" of the victim. Defendant argued that the information "may be exculpatory and will likely solidify the Defendant's position that the decedent was the initial aggressor."

¶ 5 The victim's parents and the prosecutor objected to the request[1] and indicated that they did not have possession of the requested records, the request was precluded by the Victims' Bill of Rights, Ariz. Const. art. 2, § 2.1; A.R.S. §§ 13–4401, –4438 (2002), the records were subject to the physician-patient and other statutory privileges, and the records were not material to Defendant's self-defense claim and would not be admissible at trial. Following a hearing, the trial court denied Defendant's motion. Defendant was subsequently convicted after trial to a jury.

## DISCUSSION

### I. The Trial Court Did Not Err in Denying Defendant's Request for the Victim's Medical Records.

¶ 6 "[W]hether a criminal defendant is entitled to discovery of certain evidence[, including medical records,] is a matter within the trial court's discretion." *State v. Tyler*, 149 Ariz. 312, 314, 718 P.2d 214, 216 (App.1986). This court will not disturb a ruling on a discovery request absent an abuse of that discretion. *State v. Fields*, 196 Ariz. 580, 582, ¶ 4, 2 P.3d 670, 672 (App.1999). To the extent Defendant sets forth a constitutional claim in which he asserts that the information is necessary to his defense, however, we will conduct a de novo review. *See Emmett McLoughlin Realty, Inc. v. Pima County*, 212 Ariz. 351, 355, ¶ 16, 132 P.3d 290, 294 (App.2006) (the appellate court reviews constitutional claims de novo).

¶ 7 On appeal, Defendant does not contest that the victim's medical records are protected by both the Victims' Bill of Rights and the physician-patient privilege. However, he relies on *State ex rel. Romley v. Superior Court (Roper)*, 172 Ariz. 232, 836 P.2d 445 (App.1992), to argue that his due process right to present a complete defense and to cross-examine witnesses entitles him to the records and overcomes both the physician-patient privilege and any rights the victim's parents have under the Victims' Bill of Rights.

¶ 8 *Roper*, however, did not authorize a wholesale production of the victim's medical records to the defendant. In *Roper*, the defendant was charged with aggravated assault for stabbing her husband. *Id.* at 237, 836 P.2d at 450. The defendant wife alleged that her husband had multiple personalities, some of which were violent, and that she had stabbed him in self-defense when he was attacking her while manifesting one of these violent personalities. *Id.* The defendant's assertions were buttressed by her husband's

---

1. When the victim dies as a result of a crime, Arizona Revised Statutes ("A.R.S.") section 13–4401(19)(2001) specifies that the decedent's parents are victims for purposes of the Victim's Bill of Rights. A companion statute, A.R.S. § 13– 4403(B) (2001), also permits the parents to represent the decedent in the exercise of his rights as a victim. It provides: "[i]f a victim is ... deceased ... the court may appoint a lawful representative who is not a witness."

multiple arrests and at least one conviction for domestic violence in which the defendant had been the victim, husband's extensive psychiatric treatment over the years, and that it had been the defendant, not her husband, who had made the 9–1–1 call requesting help on the night of the stabbing. *Id.* Because the defendant had attended the treatment sessions between her husband and at least one of his treating psychiatrists, she asked that the court find a general waiver as to all of her husband's treatment records and order them to be disclosed to assist in establishing her justification defense. *Id.* at 234–35, 836 P.2d at 447–48. The court, while declining to find a general waiver with respect to her husband's treatment records, agreed to review the records *in camera* to determine if any should be disclosed. The State petitioned for special action review of the trial court's decision. *Id.*

¶ 9 Upon accepting jurisdiction, we noted that the resolution of the question required a careful balancing of the defendant's federal and state constitutional rights to a fair trial with the victim's constitutional right to be free from pretrial discovery initiated by the defendant. *Id.* at 236, 836 P.2d at 449. After setting forth the factors that govern such balancing, and the unique facts of *Roper* in which the defendant had attended at least some of the victim's treatment sessions, we ordered that the trial court conduct an *in camera* review of the victim's medical records to determine if any needed to be turned over to the defense in light of these competing concerns. *Id.* at 240–41, 836 P.2d at 453–54.

¶ 10 In doing so, we authorized some infringement, limited to the extent required by the nature of an *in camera* review, on both the victim's right to be free of discovery under the Victim's Bill of Rights and the victim's physician-patient privilege in any documents in which that right had not been waived. Nevertheless, we did so in the context of a reasonable possibility that the information sought by the defendant included information to which she was entitled as a

matter of due process, and to which her victim husband had arguably waived his physician-patient privilege as to her by including her in some of his treatment sessions. *See, e.g., Bain v. Superior Court,* 148 Ariz. 331, 334, 714 P.2d 824, 827 (1986) (stating the psychologist/client privilege may be waived when the patient pursues a course of conduct inconsistent with the privilege). We, thus, merely recognized the possibility that due process could override other rights, that some privilege might have been waived, and then authorized the trial court to weigh these competing rights after considering the evidence and the defendant's need for it in presenting her defense.

¶ 11 By contrast, in this case, Defendant presented no sufficiently specific basis to require that the victim provide medical records to the trial court for an *in camera* review. Here the Defendant makes no showing that the victim's physician-patient privilege may have been waived as to him, nor does he make any otherwise adequate showing that the information sought might contain materials necessary to fully present his justification defense or to the cross-examination of witnesses. In the absence of either showing, the trial court did not err by declining to order production of the documents to the defense or infringing on the victim's constitutional and statutory rights.

## A. The Justification Defense

¶ 12 Due process requires that the defendant receive " 'a meaningful opportunity to present a complete defense.' " *Holmes v. South Carolina,* 547 U.S. 319, 126 S.Ct. 1727, 1728, 164 L.Ed.2d 503 (2006) quoting *Crane v. Kentucky,* 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986). Defendant argues that under the facts of this case he is entitled to discover the victim's medical records to fully present his justification defense by establishing that, in his encounter with the victim, the victim was the initial aggressor.[2]

¶ 13 When the Defendant raises a justification defense, he is entitled to offer at

---

2. Although the existence of an aggressive character trait in the victim might be relevant to a justification defense, it is not an element of the

defense. *State v. Williams,* 141 Ariz. 127, 130 685 P.2d 764, 767 (App.1984). Neither is the identity of the original aggressor.

least some "proof of the victim's reputation for violence." *State v. Zamora*, 140 Ariz. 338, 341, 681 P.2d 921, 924 (App.1984). However, he may do so only in limited ways. The defendant may offer into evidence specific instances of violence committed by the victim but "only if the defendant knew of them ... or if they are directed toward third persons relating to or growing out of the same transaction, or so proximate in time and place and circumstances as would legitimately reflect upon the conduct or motives of the parties at the time of the affray." *Id.* at 340, 681 P.2d at 923. The defendant may also offer reputation or opinion evidence that the victim has a violent or aggressive character trait. See Ariz. R. Evid. 404(a)(2) (permitting evidence of a pertinent trait of character of the victim offered by an accused); Ariz. R. Evid. 405(a) (where evidence of a character trait is admissible such evidence is limited on direct examination to reputation or opinion evidence).

### 1. The Victim's Specific Violent Acts.

¶ 14 Arizona courts have long held that a homicide defendant who offers a defense of justification "should be permitted to introduce evidence of specific acts of violence by the deceased if the defendant either observed the acts himself or was informed of the acts before the homicide." *State v. Taylor*, 169 Ariz. 121, 124, 817 P.2d 488, 491 (1991). The reason courts permit this evidence in such circumstances is "to show that the defendant was justifiably apprehensive of the decedent and knew that the decedent had a violent disposition," *Id.* (citations omitted), and that this may have affected the defendant's thinking about the need to respond with deadly physical force.

¶ 15 As the trial court noted in refusing Defendant's pre-trial request for the victim's medical records here, however, Defendant claimed no knowledge of any violent tendencies of the victim or any violent acts committed by him prior to the Defendant's altercation with the victim. Thus, other acts of violence that may have been reflected in victim's medical records would not have been admissible for purposes of establishing Defendant's justification defense because Defendant would not have been influenced by them

when deciding to use deadly force in responding to the victim in their escalating conflict. *See, e.g., Taylor*, 169 Ariz. at 121, 817 P.2d at 488, *State v. Young*, 109 Ariz. 221, 223, 508 P.2d 51, 53 (1973); *State v. Jackson*, 94 Ariz. 117, 121, 382 P.2d 229, 231 (1963) *Mendez v. State*, 27 Ariz. 82, 88, 229 P. 1032, 1034 (1924) (emphasis added) (citation omitted); *see also Williams*, 141 Ariz. at 130, 685 P.2d at 767; *Zamora*, 140 Ariz. at 340–41, 681 P.2d at 923–24.

¶ 16 At trial Defendant did testify at some length about his escalating conflict with the victim, the victim's violent acts during the altercation, and Defendant's use of force that resulted in the victim's death. Thus he was allowed to testify as to those specific acts of the victim "as would legitimately reflect upon the conduct or motives of the parties at the time of the affray." *Zamora*, 140 Ariz. at 341, 681 P.2d at 924. Defendant presumably also would have been allowed to testify as to any specific acts of violence committed by the victim that Defendant was aware of prior to his altercation with the victim, but, he was apparently aware of none. And, as *Taylor, Young, Jackson* and the other cases cited above demonstrate, the trial court's refusal to open the victim's medical records to Defendant did not deprive him of the opportunity to introduce any specific violent act testimony that would have been available to other defendants in similar cases.

¶ 17 We are aware that in comparatively rare cases the need to guarantee due process to a defendant can override generally applicable procedural or evidentiary rules and statutes if those rules are arbitrary. *See, e.g., Holmes*, 547 U.S. at ——– ——, 126 S.Ct. at 1731–32 (holding that state evidentiary rule excluding evidence of third-party guilt based on strength of state's case denied the defendant due process and citing other cases in which the application of other "arbitrary" state evidentiary rules denies due process). But, the state laws at issue here are not "arbitrary" and Defendant was able to present evidence as to all of the victim's acts of violence that were appropriate to the facts of his case. His inability to present additional violent acts of the victim at trial here results not from evidentiary rules that pre-

vent him from obtaining or presenting otherwise relevant evidence, but from Defendant's lack of knowledge of any such acts prior to his altercation with the action that would be relevant to his justification defense. We thus conclude that in light of the rights afforded to the victim by Arizona Constitution and statute, the trial court did not err in declining to require that the victim's representatives produce the victim's medical records to the extent they would reveal other violent acts of the victim.

### 2. The Victim's Aggressive Character.

¶ 18 Other than presenting evidence of specific acts of violence, a defendant may present evidence of a trait of the victim's character "by testimony as to reputation or by testimony in the form of an opinion." Ariz. R. Evid. 405. Nevertheless, pursuant to the physician-patient privilege, a defendant may not seek to establish a victim's character trait through the testimony of the victim's doctor, or psychologist, or by using the victim's medical records without the victim's consent. A.R.S. § 13–4062(4) (2002) ("A person shall not be examined in the following cases: A physician . . . without consent of the physician's patient, as to any information acquired in attending the patient which was necessary to enable the physician . . . to prescribe or act for the patient."); A.R.S. § 32–2085 (2002) ("Unless the client waives the psychologist-client privilege in writing or in court testimony, a psychologist shall not . . . divulge information that is received by reason of the confidential nature of the psychologist's practice.") Once the privilege attaches it prohibits "not only testimonial disclosures in court but also pretrial discovery of information within the scope of the privilege." *Bain,* 148 Ariz. at 333, 714 P.2d at 826. Thus a defendant cannot seek to use either the testimony of the victim's

doctors or the doctor's medical records to provide either an opinion as to a victim's character trait, or to establish a reputation for such a trait.[3]

¶ 19 As the transcript of the trial demonstrates, however, Defendant was able to present testimony that the victim had a character trait that caused him to become more easily agitated and aggressive when not on medication. During their testimony on cross-examination the victim's parents and another friend of the victim testified that the victim had a history of mental illness including depression and some traits of paranoia and that he tended to be more agitated and aggressive when he was not on his medication.[4] Defendant further offered evidence suggesting that the victim was not taking his prescribed medication at the time of his altercation with Defendant. The State did not contest these points.

¶ 20 Defendant also presumably could have called additional appropriate witnesses to opine as to whether the victim had a character trait for violence or aggressiveness. Or, he could have testified or called others to testify, assuming such testimony existed, that "the witness has heard others in the relevant community speak about the victim's character, and that the community generally speaks of the victim as a violent [or aggressive] person." *Zamora,* 140 Ariz. at 341, 681 P.2d at 924. Defendant, however, presented no such testimony.

¶ 21 To the extent Defendant's brief could be broadly read to argue that he was deprived of due process because he was prevented from presenting additional reputation or opinion testimony about traits of the victim's character due to the trial court's pretrial refusal to order that all of the victim's medical records be turned over to him, we disagree. Because the state is obliged by the

---

3. So long as private records remain privileged, they normally would not serve to establish a reputation. Defendant cannot gain access to that which is private by arguing that it is relevant because it serves to establish a community reputation.

4. Behavior that results from a mental illness when appropriate medication is not taken would

qualify as "a pertinent trait of character offered by the accused," and thus admissible pursuant to Arizona Rules of Evidence 404(a)(2). *See, e.g., State v. Williams,* 141 Ariz. 127, 130, 685 P.2d 764, 767 (App.1984) ("Evidence of a victim's tendency to engage in violent acts while under the influence of intoxicating liquor is properly considered character evidence.").

constitution, case law, and the rules of criminal procedure to provide the defense with all exculpatory and other specified information in its possession, the defendant has no general right to pre-trial discovery in a criminal case. *State v. Tucker*, 157 Ariz. 433, 438, 759 P.2d 579, 584 (1988) ("There is no general federal constitutional right to discovery in a criminal case."); *Norgord v. State ex Rel. Berning*, 201 Ariz. 228, 233, ¶ 21, 33 P.3d 1166, 1171 (App.2001) quoting *State v. O'Neil*, 172 Ariz. 180, 182, 836 P.2d 393, 395 (App.1991) ("It is well-established that there is neither a federal nor a state constitutional right to pretrial discovery.")

¶ 22 Nevertheless, consistent with due process, when the defendant demonstrates a sufficient potential need for additional information not in the possession of the prosecutor, the trial court may order third parties to produce it so long as, in the exercise of the court's discretion, the defendant (1) "has substantial need in the preparation of the defendant's case for material or information ... and, (2), the defendant is unable without undue hardship to obtain the substantial equivalent by other means." Ariz. R. Crim P. 15.1(g). However, in a case such as this in which ordering any production of the information sought would also infringe on a victim's constitutional and statutory privileges, before the Court could order an *in camera* production of the materials for its review, the defendant would have to demonstrate that his "substantial need" for the information would, at least potentially, amount to one of constitutional dimension. Assuming that these prerequisites are met, the trial court is then justified in ordering a production of the sought information for its *in camera* review in which it can then carefully balance the competing rights to the information sought in context. If the court then determines any disclosure is necessary, it may then carefully circumscribe the disclosure to the extent permissible consistent with the defendant's exercise of the constitutional right to a fair trial.

¶ 23 In the instant case, in Defendant's motion to compel, he told the court that the police records demonstrated that the victim's parents, in their respective interviews with the police, disclosed the mental and emotional challenges of their son particularly when he was not on his medication. Defendant then requested the compelled disclosure of all of the victim's medical records because "[Defendant] wishes to hire an expert witness to examine those records and to possibly give an opinion at trial as to the victim's actions as described by the Defendant and quite possibly as described by the Decedent's parents and to full [sic] present his theory of defense." As has been detailed above, an expert witness would not be allowed to testify as to "the victim's actions." While Defendant himself was allowed to testify as to all of the victim's actions at the time of the altercation, neither he nor anyone else would have been allowed to testify as to any of the victim's violent acts prior to the altercation because Defendant was not aware of any such acts prior to his deadly encounter with the victim. And, to the extent the parents discussed with the police the victim's mental and emotional challenges, that would not permit an expert to testify as to the victim's actions. Defendant in his motion did not seek access to only that information in the victim's medical records that would be necessary to assist an expert in opining as to whether the victim had a relevant character trait and that he would not otherwise be able to obtain. Nor in light of the likely testimony of the victim's parents and Defendant is it apparent that the evidence sought would not be otherwise available.

¶ 24 At any rate, even assuming Defendant could have otherwise complied with the requisites for disclosure as to some of victim's medical records, he asked for the complete and direct disclosure of all of the victim's medical records. The unlimited nature of this request provided a sufficient basis upon which the trial court could have denied the motion as presented without abusing its discretion. Once the trial court denied Defendant's motion, Defendant never subsequently renewed the motion on more specific grounds. The trial court made it clear that to the extent Defendant wanted to offer evidence of a character trait of the accused he could do so through reputation or opinion testimony. Defendant did so. He was thus

not denied an opportunity to fully present his defense.

¶ 25 And, as we have already noted, there is no alternate basis, as there may have been in *Roper*, to compel disclosure of the victim's medical records based on a finding that the victim had waived all or part of his privilege in his treatment records with respect to Defendant. Thus, given the facts presented, it was not error for the trial court to refuse to review the victim's medical records *in camera*.

## B. Cross–Examination

■ ¶ 26 Although Defendant asserts that he also needed pre-trial discovery of the victim's medical records to cross-examine the witnesses against him, he does not support this argument. Although in *Roper* we recognized that a defendant might need pre-trial access to the victim's medical records both to impeach the victim's ability to perceive events and cross-examine the victim to establish the defendant's justification defense through the victim's testimony, 172 Ariz. at 240, 836 P.2d at 453, there are, again, significant differences that distinguish this case from *Roper*.

¶ 27 In *Roper*, the defendant had the right to call the victim as a witness at trial. Here, the victim was deceased and could not have testified at trial. Because the victim did not testify, there was no reason to discredit his ability to actually perceive events. And, because Defendant claimed no past knowledge of the victim's violent tendencies, as the defendant did in *Roper*, any evidence of past violent acts was, at any rate, inadmissible at trial.

¶ 28 Further, as we recognized in *Roper*, for the most part, "confrontation clause rights are *trial* rights that do not afford criminal defendants a right to pretrial discovery." *Id.* at 240, 836 P.2d at 453 (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 53, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987)). Defendant does not identify a limitation on his ability to cross-examine the witnesses. As a result, we conclude that Defendant's constitutional right to cross-examine witnesses against him was not violated by the trial court's decision refusing pre-trial disclosure of the victim's medical records.

## II. The Trial Court Did Not Err in Permitting the State to Introduce Evidence Regarding the Burglary or the Check–Cashing Scheme.

¶ 29 Prior to trial, the State gave notice of its intent to introduce evidence to establish that the parents and friends of the victim suspected that Defendant was involved in a burglary of the victim's apartment. During the hearing on the admissibility of this evidence, Defendant made an additional motion to also preclude evidence that the victim's mother suspected that Defendant was involved in a separate check-cashing scheme that defrauded the victim. The trial court ultimately permitted evidence on both of these matters because it ruled the evidence was relevant to rebut Defendant's testimony that he and the victim were friends and Defendant was welcome at the victim's apartment. Defendant contends the trial court abused its discretion in admitting evidence regarding both the burglary and the check-cashing scheme. We disagree.

¶ 30 As a general rule, "all relevant evidence is admissible." Ariz. R. Evid. 402. Relevant evidence is evidence that has any tendency to make the existence of any fact in dispute more or less probable. Ariz. R. Evid. 401. Relevant evidence may be excluded, however, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading to the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Ariz. R. Evid. 403.

¶ 31 One exception to the general rule of admissibility is set forth in Arizona Rule of Evidence 404(b). This rule states:

> Except as provided in Rule 404(c) evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

¶ 32 Rule 404(b) only precludes evidence that is offered to show the character of a defendant to prove disposition to acts of a particular type. *State v. Ramirez Enriquez*, 153 Ariz. 431, 432, 737 P.2d 407, 408 (App.1987). Evidence relevant for any purpose other than showing propensities to act in a certain way remains admissible. *State v. Jeffers*, 135 Ariz. 404, 417, 661 P.2d 1105, 1118 (1983) (citations omitted). If the evidence is relevant to prove a proper purpose, the trial court "must determine if the probative value is substantially outweighed by the danger of unfair prejudice." *State v. Dickens*, 187 Ariz. 1, 19, 926 P.2d 468, 486 (1996). So long as the decision to admit the other-act evidence is supported by the facts before the court, the trial court's decision will be affirmed on appeal unless a clear abuse of discretion appears.[5] *Jeffers*, 135 Ariz. at 417, 661 P.2d at 1118.

### A. The Burglary Evidence

¶ 33 The evidence relating to the burglary that occurred at the victim's apartment is not true other-act evidence as contemplated by Rule 404(b). The prosecution introduced evidence that family and friends of the victim had told him they believed Defendant had burglarized his apartment. But the purpose for offering the evidence was not to establish that Defendant committed the burglary, but rather to show that the victim had been warned to stay away from Defendant and that Defendant was therefore not welcome at the victim's apartment. Such evidence was relevant to the victim's state of mind and rebutted Defendant's testimony that he was a friend with the victim and welcome at his apartment. After considering the proposed testimony, the trial court ruled that evidence of what the victim had been told about the burglary was relevant to explaining the victim's behavior. To avoid prejudice to Defendant, the court instructed the jury that there was no evidence that Defendant had in fact burglarized the apartment.

¶ 34 Under these circumstances, there was no abuse of discretion by the trial court in admitting this evidence as relevant to the victim's state of mind under Rules 401 and 402, as not unduly prejudicial under Rule 403 and as not excluded by Rule 404(b). Accordingly, there was no error in the admission of this evidence.

¶ 35 Defendant further contends that, even if the evidence concerning the burglary was properly admitted, the issue of the burglary improperly expanded during the trial to the extent that it became far more prejudicial than probative. Defendant's argument arises from the testimony of Defendant's former girlfriend about his whereabouts on the date of the burglary. Defendant acknowledges, however, that his counsel initiated the questioning in this area and therefore "opened the door" to this line of inquiry. *See Pool v. Superior Court*, 139 Ariz. 98, 103, 677 P.2d 261, 266 (1984). More significantly, no objection was made by Defendant to any of the questioning directed at his possible involvement in the burglary. When evidence is admitted at trial for a limited purpose, a party waives the right to raise on appeal the misuse of the evidence by failing to object or request a limiting instruction in response to an improper use of the evidence. *State v. Kiper*, 181 Ariz. 62, 67, 887 P.2d 592, 597 (App.1994) (holding that the failure to object allows a party to use admitted evidence for any purpose). Consequently, this issue is waived on appeal absent fundamental error. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005).

¶ 36 To qualify for relief on appeal for a fundamental error committed at trial "a defendant must establish both that fundamental error exists and that the error in his case caused him prejudice." *Id.* at ¶ 20, 115 P.3d 601. Furthermore, " 'the prej-

---

5. The State argues that a Rule 404(b) analysis is not necessary because the evidence regarding both the burglary and the check-cashing scheme is "intrinsic" to the murder charge. Rule 404(b) applies only to "extrinsic" evidence. *Dickens*, 187 Ariz. at 18 n. 7, 926 P.2d at 485 n. 7. Because evidence regarding the burglary and Defendant's involvement in the check-cashing scheme was properly admissible under other grounds, we need not consider whether it was intrinsic evidence. *See State v. Alatorre*, 191 Ariz. 208, 212, ¶ 15, 953 P.2d 1261, 1265 (App. 1998).

udicial nature of the unobjected-to error must be evaluated in light of the entire record' before the error can be labeled as fundamental." *State v. King,* 158 Ariz. 419, 424, 763 P.2d 239, 244 (1988) (quoting *State v. Thomas,* 130 Ariz. 432, 436, 636 P.2d 1214, 1218 (1981)). Considering the record as a whole, and in particular the limiting instructions given by the trial court regarding the use of the burglary evidence, the testimony elicited regarding whether Defendant had an opportunity to commit the burglary does not rise to the level of fundamental error.

### B. The Check–Cashing Scheme

¶ 37 The mother of the victim regularly reviewed his financial transactions. She thus had become aware through losses in his checking account that, at the request of others, the victim had accepted for deposit in his account forged third-party checks. In exchange for the forged checks the victim had withdrawn cash from his account in the amount of the checks and given the money to the person who had requested the victim to cash the checks. As a result of the scheme, the victim had suffered a significant loss in his checking account. When the victim's mother became aware of the loss, she informed the victim of what had occurred and advised him to stay away from anyone who had asked him to accept third-party checks in exchange for cash from the victim's bank account. She further told him to "be very careful who he had in his home" and to "only have very close friends inside."

¶ 38 At trial two witnesses testified that Defendant and others had asked the victim to cash fraudulent third-party checks for Defendant. In light of the victim's mother's testimony that she had warned her son to stay away from anyone who asked him to "cash" third-party checks, the evidence was offered to rebut Defendant's testimony that he had been friends with the victim and welcome at his apartment and that the victim had acted irrationally and been paranoid in accusing Defendant of stealing money from him. This evidence again allowed the jury to reasonably conclude that Defendant was not a friend with the victim, was not welcome at his apartment, and the victim had a reason

for accusing Defendant of stealing money from him. The jury could reasonably conclude that it had the effect on the victim's state of mind for which it was offered, thus rebutting Defendant's testimony. *See State v. Gulbrandson,* 184 Ariz. 46, 61, 906 P.2d 579, 594 (1995); *see also State v. Terrazas,* 189 Ariz. 580, 584, 944 P.2d 1194, 1198 (1997) (holding the state bears the burden of proving by clear and convincing evidence that the other act occurred and that the defendant committed the act).

¶ 39 Further, the trial court expressly weighed the prejudicial effect of this evidence and found that it did not substantially outweigh its probative value given the nature of the defense presented. "Evidence is unfairly prejudicial only when it has an undue tendency to suggest a decision on an improper basis such as emotion, sympathy, or horror." *Gulbrandson,* 184 Ariz. at 61, 906 P.2d at 594 (citation omitted). Because "[t]he trial court is in the best position to balance the probative value of challenged evidence against its potential for unfair prejudice," the trial court has broad discretion in this decision. *State v. Harrison,* 195 Ariz. 28, 33, ¶ 21, 985 P.2d 513, 518 (App.1998), *aff'd,* 195 Ariz. 1, 985 P.2d 486 (1999). In addition, contrary to Defendant's contention, the trial court gave a limiting instruction on the proper use of other-act evidence by the jury, which would mitigate any potential for unfair prejudice. Accordingly, there was no abuse of discretion by the trial court in overruling Defendant's objection to this evidence. *See State v. Mott,* 187 Ariz. 536, 546, 931 P.2d 1046, 1056 (1997).

### CONCLUSION

¶ 40 For the foregoing reasons, we conclude that Defendant was not deprived of his due process right to present a complete defense and the court did not err in admitting evidence related to the burglary of the victim's apartment or the check-cashing scheme. Accordingly, we affirm Defendant's conviction and sentence.

CONCURRING: JEFFERSON L.

LANKFORD, Presiding Judge [6], and ANN
A. SCOTT TIMMER, Judge.

---

**6.** The Honorable JEFFERSON L. LANKFORD,
*Retired, is authorized to participate in this ap-*
peal by the Chief Justice of the Arizona Supreme
Court pursuant to Ariz. Const. art. 6, § 3 and
*Administrative Order No. 2007–17.*