NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

RYAN FRANK CRANDALL, *Appellant.*

No. 1 CA-CR 12-0342
FILED 3-27-2014

Appeal from the Superior Court in Maricopa County
No.  CR2011-119307-001
The Honorable Kristin C. Hoffman, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jana Zinman
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Cory Engle
*Counsel for Appellant*

## MEMORANDUM DECISION

Presiding Judge Maurice Portley delivered the decision of the Court, in which Judge John C. Gemmill and Judge Kent E. Cattani joined.

**P O R T L E Y,** Judge:

**¶1**        Ryan Frank Crandall appeals his conviction and sentence for aggravated assault, a class 4 felony.  He contends that the trial court erred in granting the State's motion precluding a witness from testifying about an alleged violent act by the victim that Crandall also witnessed an hour before the assault.  Because we find no abuse of discretion, we affirm.

### FACTUAL[1] AND PROCEDURAL BACKGROUND

**¶2**        The victim and Crandall met at a neighborhood barbeque in April 2011.  Later that evening, several people at the barbeque, including Crandall and the victim, went to the Riff Raff Bar.  After spending a couple of hours drinking and socializing at the bar, Crandall, the victim, and another man climbed into the bed of Crandall's truck, while another person drove them back to Crandall's house.  On the way back, an El Mirage police officer saw Crandall and the other man standing up and dancing or jumping around the truck bed.  The officer pulled over the truck and the driver was subsequently arrested for DUI.

**¶3**        During the traffic stop, Crandall and the victim got into an argument in front of the officer.  They separately returned to Crandall's house, had another short verbal altercation while in front of the house, but stopped when the victim moved away and started talking to a woman.  Crandall then moved towards the victim and punched him in the face, causing his nose to bleed.  Crandall then threw the victim to the ground, put his hand over victim's mouth and nose and said, "You're done, good night."  Other people pulled Crandall off the victim, and the victim was taken to a hospital emergency room.  The victim had a broken nose, dislocated shoulder, and broken foot.  Crandall was subsequently

---

[1] We review the evidence in the light most favorable to sustaining a conviction, and resolve all reasonable inferences against a defendant. *State v. Manzanedo*, 210 Ariz. 292, 293, ¶ 3, 110 P.3d 1026, 1027 (App. 2005).

charged, tried, and convicted of aggravated assault, and sentenced to prison for 2.5 years, with thirty-four days of presentence incarceration credit.

**DISCUSSION**

**¶4** Just before opening statements, the State successfully moved to preclude the testimony of Charlie Anaya. Crandall wanted Anaya, who had been at the Riff Raff Bar, to testify that the victim was "mad dogging" at that bar; that is, the victim walked between Anaya and a woman he was talking to, bared his teeth and growled like a dog. Crandall claimed that the testimony was relevant to his justification defense because it demonstrated (1) that the victim was more than likely the initial aggressor in the later event, (2) Crandall's state of mind; and (3) that Crandall's actions toward the victim were reasonable.

**¶5** We review evidentiary rulings for abuse of discretion. *State v. Fish*, 222 Ariz. 109, 114, ¶ 8, 213 P.3d 258, 263 (App. 2009). We will not disturb the exclusion of evidence absent an abuse of discretion and resulting prejudice. *State v. Ayala*, 178 Ariz. 385, 387, 873 P.2d 1307, 1309 (App. 1994).

### I. Other Act Evidence

**¶6** The trial court excluded Anaya's testimony pursuant to Arizona Rule of Evidence ("Rule") 404(b). The Rule, entitled "[o]ther crimes, wrongs or acts," precludes the introduction of other acts to prove the character of a person and that the person acted in conformity. Ariz. R. Evid. 404(b). Other act evidence, however, can be admitted to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id*.; *Fish,* 222 Ariz. at 122-23, ¶ 42, 213 P.3d at 271-72. For example, if the victim has a felony conviction that the defendant knows about, the conviction may be admissible under Rule 404(b) because it is relevant to a defendant's state of mind. *See State v. Taylor*, 169 Ariz. 121, 125, 817 P.2d 488, 492 (1991) (citing *State v. Jeffers*, 135 Ariz. 404, 417, 661 P.2d 1105, 1118 (1983) ("The list of 'other purposes' in rule 404(b) . . . is not exclusive; if evidence is relevant for any purpose other than that of showing the [person's] criminal propensities, it is admissible even though it refers to his prior bad acts.")).

## A. Reasonableness/Defendant's State of Mind

**¶7**        The Arizona Supreme Court has held that a defendant arguing self-defense may introduce specific acts of violence or aggression by a victim that the defendant observed or knew about before the alleged crime to show that the defendant's response was reasonable. *See State v. Santanna*, 153 Ariz. 147, 149, 735 P.2d 757, 759 (1987); *accord State v. Connor*, 215 Ariz. 553, 558-59, ¶¶ 13-14, 161 P.3d 596, 601-02 (App. 2007). Although the State argues that the evidence can only be admitted in a homicide case, we find the argument unpersuasive. *See State v. Zamora*, 140 Ariz. 338, 340-41, 681 P.2d 921, 923-24 (App. 1984) (permitting defense in an aggravated assault case to introduce specific instances of the victim's possession of a gun, of which the defendant was aware; evidence was relevant to the defendant's state of mind at the time of the incident).

**¶8**        Specific acts by the victim, which influence defendant's state of mind, are admissible "only if the defendant *knew of them* . . . or if *they are directed* toward third persons relating to or growing out of the same transaction, or so proximate in time and place and circumstances as would legitimately reflect upon the conduct or motives of the parties at the time of the affray." *Connor*, 215 Ariz. at 559, ¶ 13, 161 P.3d at 602 (quoting *Zamora*, 140 Ariz. at 340, 681 P.2d at 923) (emphasis added). Evidence of an alleged act may be precluded if it relates to a single act and could potentially distract jurors and unfairly prejudice the victim. *Fish*, 222 Ariz. at 121, ¶ 34, 213 P.3d at 270.

**¶9**        Here, the totality of the trial evidence supports the court's ruling. Although Crandall witnessed the "mad-dogging" incident and it was arguably relevant to his state of mind, the act of "mad-dogging" was not necessarily violent; there were no physical or verbal threats. Anaya, who was at the bar, was not part of the neighborhood party at the bar. The "growling" incident was not directed at Crandall. Moreover, because Anaya did not know the victim and there was a question of whether he could identify the victim as the person who engaged in "mad-dogging," his testimony could have potentially distracted the jurors.[2] Finally, there were intervening circumstances that occurred after Crandall witnessed the "mad-dogging" and when he assaulted the victim.

---

[2] Because Anaya did not know the victim before the incident, the defense also needed to call a defense investigator to establish the foundation that he showed Anaya a photographic line-up and that Anaya was sixty to seventy percent sure that he had the run-in with the victim.

### B. **Corroboration/Defendant's Credibility**

¶10    Crandall argues on appeal that Anaya's testimony should have been admissible "to rebut the state's argument that the defendant fabricated or exaggerated the victim's acts during the incident." At trial, however, Crandall only argued that Anaya's testimony was admissible to show that the victim was likely the first aggressor and that Crandall's state of mind was affected such that he reasonably believed the victim was going to harm him. Crandall never renewed his request to have Anaya testify and never argued that Anaya's testimony would corroborate his version of the events and his credibility. Given that Crandall did not specifically make the arguments to the trial court he now raises on appeal, we review the ruling for fundamental error. *See State v. Lopez*, 217 Ariz. 433, 434, ¶ 4, 175 P.3d 682, 683 (App. 2008) ("[A] general objection is insufficient to preserve an issue for appeal. And an objection on one ground does not preserve the issue on another ground. When a party fails to object properly, we review solely for fundamental error."); *see also State v. Henderson*, 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005).

¶11    For Crandall to obtain relief for this proffered evidence purpose, he must show that a fundamental error exists and that it caused him prejudice. *See Henderson*, 210 Ariz. at 567, ¶ 20, 115 P.3d at 607. The defendant has the burden of persuasion. *Id.* at ¶ 19. Relief cannot be granted unless the error went to the case's foundation, took away a right essential to defendant's defense, or eliminated defendant's ability to have a fair trial. *Id.* "Fundamental error is clear, egregious, and of such dimension that it denied the defendant a fair trial." *State v. Rutledge*, 205 Ariz. 7, 13, ¶ 32, 66 P.3d 50, 56 (2003). Crandall cannot show fundamental error.

¶12    Evidence that sustains or impeaches a witness's credibility is generally admissible. *Jeffers*, 135 Ariz. at 417, 661 P.2d at 1118. In *Jeffers*, for example, the defendant's prior assaults were admitted to counter the defense's insinuation that a witness had fabricated her story to gain immunity. *Id.* (noting that evidence of the defendant's prior assaults explained why the witness was scared, did not immediately report a murder, and was not now lying). Similarly, here it would appear as though the victim's prior act of "mad-dogging" should be admissible to counter the State's insinuation that the defendant lied about who was the initial aggressor of the assault. *See id.* Crandall, however, could have called witnesses to the actual assault to testify, if they could, that the victim was the initial aggressor in order to counter the insinuation that Crandall was lying about who was the initial aggressor.

¶13        Moreover, because there were other witnesses to Crandall's assault, the exclusion of Anaya's "mad-dogging" testimony was not prejudicial. In fact, there was direct evidence from people who saw the interaction between the victim and Crandall that suggested that the victim was the aggressor. For example, the police officer who stopped the truck leaving the bar testified that the victim and defendant were yelling at each other. Crandall's neighbor testified that she saw the victim approach Crandall to yell at him and that the victim yelled at two other individuals before the assault. The jury, as a result, had to weigh the credibility of the witnesses and decide the facts.

## II.    Character Evidence/Initial Aggressor

¶14        Crandall also contends that the court should have allowed Anaya's testimony to demonstrate the victim's character for violence pursuant to Rule 404(a)(2). The Rule provides that an accused may offer evidence of a victim's character trait by reputation or opinion evidence to show conformity. Ariz. R. Evid. 404(a)(2). Rule 405, however, limits the evidence to testimony regarding a general character trait and does not include specific acts that were unknown to the defendant. *Fish*, 222 Ariz. at 118, ¶ 28, 213 P.3d at 267. "[E]vidence of specific acts of violence by a victim generally is inadmissible under Rule 404(a) unless the victim's character is an essential element of a claim or defense under Rule 405(b) or the evidence is admissible under Rule 404(b)." *Id.* at 117, ¶ 21, 213 P.3d at 266. Here, because Crandall was not aware of the "mad-dogging" incident, the evidence was only admissible if the victim's character was an essential element of his defense.

¶15        The victim's character, however, is not an essential element of self-defense. *Id.* at 119, ¶ 29, 213 P.3d at 268. Accordingly, Crandall was limited under Rule 405 to general reputation testimony and could not elicit the one act of "mad-dogging" to demonstrate the victim's general reputation. Consequently, the court did not abuse its discretion by precluding the victim's action in the bar to attempt to demonstrate that he was the initial aggressor.

## III.    Harmless Error

¶16        However, even if excluded evidence should have been admitted to show Crandall's reasonableness and state of mind or that the victim was the first aggressor, a conviction will not be reversed unless there is a reasonable probability that the verdict would have been different if the evidence had been introduced. *See State v. Van Adams*, 194

Ariz. 408, 416, ¶ 23, 984 P.2d 16, 24 (1999) (noting that admission of testimony that was irrelevant and emotional was harmless error); *see also State v. Lacy*, 187 Ariz. 340, 348-49, 929 P.2d 1288, 1296-97 (1996). We review an alleged trial error under the harmless error standard when a defendant objects at trial. *Henderson*, 210 Ariz. at 567, ¶ 18, 115 P.3d at 607. As a result, the State has the burden "to prove beyond a reasonable doubt that the error did not contribute to or affect the verdict or sentence." *Id.*

¶17 Any possible error in precluding Anaya's proposed testimony was harmless. There were several witnesses to the aggravated assault and none testified that Crandall's aggressive conduct precipitated the attack. Because the eyewitnesses testified, the exclusion of Anaya's testimony about the "growling" at the bar was harmless.

¶18 Moreover, Crandall testified about the bar incident and that he found it confrontational. He then referred to his testimony during closing argument to attempt to convince the jury that the victim was the aggressor. Because the jurors were aware of the incident without Anaya's testimony, they had to weigh the testimony and determine credibility of all the witnesses in deciding the facts of what happened and whether the State proved its case beyond a reasonable doubt. Consequently, any possible error by the preclusion of Anaya's testimony was harmless.

**CONCLUSION**

¶19 Based on the foregoing, we affirm Crandall's conviction and sentence.



Ruth A. Willingham · Clerk of the Court
FILED: MJT