NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JOSE UBALDO RUBIO FIGUEROA, *Appellant.*

No. 1 CA-CR 18-0055
FILED 4-4-2019

Appeal from the Superior Court in Maricopa County
No. CR 2016-129015-001
The Honorable David O. Cunanan, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jillian Francis
*Counsel for Appellee*

Bain & Lauritano PLC, Glendale
By Sheri M. Lauritano
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Kenton D. Jones joined.

**C R U Z**, Judge:

¶1        Jose Ubaldo Rubio Figueroa appeals his conviction and sentence for second degree murder, a class 1 felony, and interfering with judicial proceedings when he violated an order of protection, a class 1 misdemeanor.  Figueroa argues the court erred when it permitted the two charges to be tried jointly, because hearing evidence of the misdemeanor charge prejudiced the jury in their deliberation on the murder charge.  Figueroa further argues the superior court erred by allowing the jury to determine the question of guilt as to the misdemeanor charge.  Finding no reversible error, we affirm Figueroa's convictions and sentences.

**FACTS[1] AND PROCEDURAL HISTORY**

¶2        Figueroa was charged and convicted of killing Maria Herminia Rivera by stabbing her to death on June 17, 2016, in the hair salon where she was employed.  Rivera's body was found by a letter-carrier.  When paramedics arrived, Rivera had no pulse and was not breathing; she was pronounced dead at the scene.

¶3        A search of Rivera's purse revealed a copy of the protection order Rivera had obtained against Figueroa.  The order prohibited Figueroa from going to the salon where Rivera was murdered.  A police officer testified he served Figueroa with the order of protection nearly two months before the date of Rivera's murder.  Rivera's work friend, Maria Solomon, testified that she was out at the grocery store with Rivera two weeks before her murder.  They came across Figueroa who, despite the order of protection, followed them to church and sat next to them during the service.  When Rivera later left, Figueroa told Solomon that Rivera "had one week" to come back to him, or else he would kill her.

¶4        Figueroa's sister-in-law, Blanca Lydia Reyes Rios, testified Figueroa called her after the murder and said that a "tragedy" had

---

[1]        We view the facts in the light most favorable to sustaining the verdicts.  *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

happened: that he had stabbed Rivera with a knife he found in the salon because he was angry after an argument they had.

¶5            After the murder, Figueroa drove Rivera's car to a nearby park, where he called police and claimed he was cut and Rivera had been hurt.  When police arrived at the park, they discovered Figueroa with multiple lacerations on his hands and in possession of Rivera's vehicle.  Police discovered blood in Rivera's vehicle, in the park bathroom, and on Figueroa's clothes.  They asked Figueroa where the knife was, to which he responded that he did not have it, that it was at the salon with Rivera.  Police later found a bloody knife outside the salon, near a dumpster behind the building; results of DNA testing showed the blood on the knife was that of both Figueroa and Rivera.

¶6            Regarding the misdemeanor charge only, at the close of evidence the court inquired whether the parties wished to submit the issue of guilt to the court or the jury.  Neither party expressed a preference on the issue and both counts were ultimately submitted to the jury for a determination of guilt.

¶7            Figueroa was convicted of both counts and sentenced to twenty-five years' imprisonment for second degree murder, and six months' jail for interfering with judicial proceedings.  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 13-4031 and -4033(A)(1).

## DISCUSSION

I.      Evidence of Protective Order

¶8            Figueroa argues the court committed reversible error when it admitted evidence that he violated a protective order by going to Rivera's place of employment.  He disputes the admissibility of the evidence because it was not relevant to prove the murder charge, he "never had the opportunity to dispute the potential underlying facts about the order," and the information was unduly prejudicial since it "may have left an impression to the jury that [Figueroa] had committed other bad acts."

¶9            Since Figueroa did not object to admission of this evidence at trial, he must now prove that admission of evidence of the protective order constitutes "error that was both fundamental and prejudicial."  *State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018) (citation omitted).  "[T]he first step in fundamental error review is determining whether trial error exists."  *Id.* at 142, ¶ 21.  Fundamental error is error going to the foundation of the case,

error that takes from the defendant a right essential to his defense, or error of such magnitude that the defendant could not possibly have received a fair trial. *Id.*

### A. Relevance

**¶10** "Relevant evidence is evidence that has any tendency to make the existence of any fact in dispute more or less probable." *State v. Connor*, 215 Ariz. 553, 562, ¶ 30 (App. 2007) (citing Ariz. R. Evid. ("Rule") 401). Because it was probative of (1) the ill will between Figueroa and Rivera, (2) Rivera's fear of and desire to have no contact with Figueroa, and (3) Figueroa's awareness that he was not welcome at and prohibited from Rivera's place of employment, evidence of the protective order properly served on Figueroa was admissible under Rule 401. *See State v. Jeffers*, 135 Ariz. 404, 418 (1983) (explaining the relevance of evidence of "prior trouble between the victim and the accused"). Furthermore, Solomon testified that Figueroa disobeyed the order on at least one occasion prior to the murder when he accompanied the women to church, and thereafter threatened to kill Rivera if she did not come back to him within one week. These factors tend to show that Rivera perceived Figueroa as a potential threat to her safety and that Figueroa was willing to disobey a court order to have contact with Rivera. These factors also tend to show Figueroa's anger and frustration towards Rivera resulted in Figueroa's visit to Rivera's place of employment—likely for the purpose of inflicting harm on her. Thus, the protective order was relevant in proving Figueroa's mental state, a fact of consequence to the charge of second degree murder.

### B. No Opportunity To Dispute Facts Underlying the Order

**¶11** Figueroa claims it was unfair to introduce evidence of the protective order at trial because he never had the opportunity to dispute the potential underlying facts about the order. This argument is wholly without merit. Arizona Rule of Protective Order Procedure 38(a) provides that "[a]t any time while a protective order . . . is in effect, a defendant may request one hearing in writing." *See also* A.R.S. § 13-3602(I). Additionally, Figueroa had the opportunity to cross-examine the foundational witness at trial and to argue against any implication that he ever behaved in a manner that could have frightened Rivera.

### C. Unduly Prejudicial

**¶12** Figueroa also argues that information regarding the protective order "may set [him] out in a bad light and may have left an impression to the jury that [he] committed other bad acts." To be sure, the

4

superior court may "preclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." *State v. Trujillo*, 245 Ariz. 414, 423, ¶ 30 (App. 2018) (citing Ariz. R. Evid. 403) (internal quotations omitted). Here, in order to minimize any potential prejudice from reviewing the entire protective order, jurors were presented with only the first page of the order. As such, jurors did not see the victim's summary of threatening facts, as included in her petition for the protective order, or any prejudicial language in the protective order itself. Any prejudice against Figueroa posed by the jury's simple awareness of the order's existence was minimal. Additionally, the court instructed the jury to "not concern yourselves with the reasons why some portions of the exhibits [were] deleted [and to] not speculate upon what the deleted portions might or might not reveal." *See State v. Ramirez*, 178 Ariz. 116, 127 (1994) (explaining the presumption that jurors follow their instructions, absent evidence to the contrary).

**¶13** On the other hand, the probative value of the protective order outweighed any potential prejudice. Evidence of the protective order—and more specifically, evidence of Figueroa's violation of the order on the day he threatened to kill Rivera—was probative of motive and of the evil intent when he tracked down Rivera and violently killed her. *See* Ariz. R. Evid. 404(b). The evidence of the protective order was both relevant to and probative of the murder charge, and the judge gave the limiting Rule 404(b) "other acts" instruction to the jury. Accordingly, because the superior court did not err in admitting it at trial, Figueroa has failed to establish error, much less fundamental error.

II.     Jury Verdict—Misdemeanor Charge

**¶14** Finally, Figueroa argues that because interfering with a judicial proceeding is a misdemeanor charge, with punishment of not more than six months, he was not entitled to a jury trial on that charge, and in fact, submitting the matter to the jury was error. Although the trial court alerted the parties to the fact that Figueroa was not entitled to a jury trial as to the misdemeanor count, Figueroa did not request the court rule on the issue of guilt. We review *de novo* whether a defendant is entitled to a bench trial.

**¶15** The constitutions of both the United States and Arizona clearly give the defendant in a criminal case the right to trial by jury; but "[i]t is well established that the right to a jury trial may be waived when the accused is aware of this right and voluntarily and intelligently relinquishes it." *State v. Durham*, 111 Ariz. 19, 20 (1974) (citing *Patton v. United States*, 281

U.S. 276 (1930)). The Arizona Constitution provides that "[t]he right of jury trial as provided by this constitution shall remain inviolate, but trial by jury may be waived by the parties . . . with the consent of the court in any criminal cause." Ariz. Const. art. VI, § 17. Accordingly, although a criminal defendant in Arizona may waive his right to a jury trial, such waiver is not without limits—the consent of both the State and the judge is required. A.R.S. § 13-3983 ("A trial by jury may be waived in criminal actions by the consent of both parties expressed in open court and entered on its minutes."); *Durham*, 111 Ariz. at 20 ("Before any waiver can become effective, the consent of [the State] and the sanction of the court must be had . . . .").

¶16        Because waiver of a jury trial in a criminal case requires the consent of the State and the court, it logically follows that there is no right to a bench trial. *See Singer v. United States*, 380 U.S. 24, 34-35 (1965) ("The ability to waive a constitutional right does not ordinarily carry with it the right to insist upon the opposite of that right. For example, although a defendant can . . . waive his constitutional right to a public trial, he has no absolute right to compel a private trial . . . .") (citation omitted). The record reflects no affirmative attempt by Figueroa to sever the charges, nor did he present any argument as to why a bench trial was required for the misdemeanor charge. Although a jury trial was not required for the misdemeanor charge, it was within the judge's discretion to propose submitting the charge to the jury. Additionally, the court specifically asked the parties if the charge should be taken from the jury and decided by the court—Figueroa did not respond. He has no tenable claim of error when he did not request the waiver, the prosecutor did not consent to any such waiver, and the court did not err by submitting the case to the jury. We find no merit to Figueroa's complaint.

## CONCLUSION

¶17        We affirm Figueroa's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:  AA