986 P.2d 216

STATE of Arizona, Appellee,

v.

Harue YOSHIDA, Appellant.

No. 1CA–CR 97–0658.

Court of Appeals of Arizona,
Division 1, Department B.

Sept. 22, 1998.

Reconsideration Denied Oct. 21, 1998.

Review Denied May 25, 1999.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel Criminal Appeals Section and Joseph T. Maziarz, Assistant Attorney General Attorneys, Phoenix, for Appellee.

Debus & Kazan, Ltd. by Tracey Westerhausen, Phoenix, for Appellant.

## OPINION

KLEINSCHMIDT, Judge.

¶1 Harue Yoshida appeals her conviction on one count of aggravated assault on a peace officer, a class 5 felony in violation of Arizona Revised Statutes Annotated ("A.R.S.") section 13–1204(A)(5) (Supp.1996). We affirm.

## FACTS

¶2 On an afternoon in January 1996, the Defendant and her boyfriend were arguing, and the boyfriend left the Defendant's apartment to walk to his own apartment.[1] The Defendant followed a short distance behind him. In an attempt to attract the boyfriend's attention, the Defendant stepped into the path of an oncoming vehicle. An off-duty police officer saw this and called the police. Before the police arrived, the Defendant returned to her own apartment.

¶3 A Tempe police officer responded to the call and, as she arrived at the Defendant's apartment, she was met by the boyfriend. He told the officer about the incident with the car and also related that, on prior occasions, the Defendant had attempted to slit her wrists and to jump off the balcony of her second-story apartment.

¶4 When the officer and the boyfriend arrived at the Defendant's apartment, the Defendant had just taken a shower, and she was wearing only a towel when she opened the door. The officer explained that she was responding to a report that the Defendant had attempted to harm herself by stepping into the path of a car. The Defendant said that she was "okay," informed the officer that she wanted to dress, and allowed her boyfriend and the officer to enter her apartment.

¶5 After the Defendant dressed, the officer tried to talk to her about the apparent suicide attempt and tried to persuade her to allow a psychological "crisis team" to come to the apartment to evaluate her emotional state. Although the Defendant was not receptive to this, the officer contacted Terros, a counseling agency, and requested that a crisis team evaluate the Defendant. At one point, the Defendant, in frustration, told the officer to go ahead and shoot her if she wanted to help. Shortly thereafter, another police officer arrived at the apartment. He observed nothing to suggest that the Defendant was suicidal.

¶6 As the first officer was calling Terros a second time to inquire when the crisis team would arrive, the Defendant ran out the front door. Believing that she might harm herself, the officers pursued, each grabbing the Defendant by an arm. As they struggled, the first officer wrapped her arm around the Defendant's neck. In response, the Defendant bit the officer's forearm, breaking the skin and drawing blood. The bite lasted about fifteen seconds before the officers subdued the Defendant and took her to jail.

¶7 The State subsequently charged the Defendant with aggravated assault in violation of A.R.S. section 13–1204(A)(5) for intentionally, recklessly or knowingly causing physical injury to the officer, knowing or having reason to know that she was a peace officer engaged in the execution of her official duties. The Defendant waived her right to a jury, and her case was tried to the court. At trial, the Defendant maintained that the officers had no real reason to believe that she was suicidal, and they had therefore unlawfully restrained her when she attempted to leave her apartment. She further argued that she bit the officer in self-defense in response to the officer's use of excessive force.

¶8 The trial judge concluded that, even if the officer had been mistaken in her belief that the Defendant was suicidal and mistaken in the belief that she had authority to detain the Defendant, the officer was nevertheless engaged in the execution of her "official duties" when the assault occurred. The judge also concluded that the officers did not use excessive force in restraining the Defendant. Accordingly, the judge found that the Defendant was not justified in using physical force against the officer, and found her guilty of the charged offense.

1. We view the facts in the light most favorable to sustaining the trial court's verdict. *State v. At-*
*wood,* 171 Ariz. 576, 596, 832 P.2d 593, 613 (1992).

## THE OFFICER WAS ENGAGED IN HER OFFICIAL DUTIES

■ ¶ 9 One element of the offense charged is that the officer must have been engaged in her official duties at the time of the assault. Arizona Revised Statutes Annotated section 36–525(B) (1993) authorizes a police officer to take into custody a person who is believed to be a danger to self or others by reason of a mental disorder until mental health screening procedures can be started. The Defendant nonetheless argues that the officer had no legal authority to enter or remain in her apartment and lacked authority to restrain the Defendant when she attempted to leave. She maintains that the only legitimate basis the officer would have had for entering the apartment without a warrant would have been to determine whether the Defendant was in need of immediate aid. *See, e.g., State v. Jones,* 188 Ariz. 388, 395, 937 P.2d 310, 317 (1997) (discussing emergency aid exception to warrant requirement of fourth amendment), *cert. denied,* 522 U.S. 1054, 118 S.Ct. 705, 139 L.Ed.2d 647 (1998). She also argues that it should have been evident to the officer that she was not in need of immediate aid, so that there was no authority for the officer to remain in the apartment. She claims that the officer, by remaining in the apartment and restraining her when she attempted to leave, violated her Fourth Amendment right to be free from unreasonable searches and seizures. She reasons that, because the officer's actions were unconstitutional, the officer was not engaged in the execution of any official duties when the assault occurred.

■ ¶ 10 We reject every aspect of the Defendant's argument. We believe that the officer had reason to enter and remain in the Defendant's apartment and to detain the Defendant when she tried to leave. Even if it were otherwise, the Defendant cannot prevail. Apparently, there is no Arizona case directly on point, but we have no difficulty in concluding that the term "official duties," as it appears in section 13–1204, encompasses all aspects of a peace officer's good faith performance of his or her job-related duties, even if the officer's actions are later found to be constitutionally unreasonable. Certainly, the legislature did not intend that police officers forfeit the protection of the statute whenever, faced with an ambiguous situation in the field, they make a mistake in how they respond. Cases from other states which interpret similar statutes support our conclusion. *See, e.g., State v. Mierz,* 127 Wash.2d 460, 901 P.2d 286, 295 (1995) (for purposes of Washington aggravated assault statute, term " 'official duties' ... encompasses all aspects of a law enforcement officer's good faith performance of job-related duties ...."); *accord Hughes v. State,* 897 S.W.2d 285, 298 (Tex. Crim.App.1994) (officer acting within "lawful discharge of official duties" even when he makes an unlawful traffic stop).

## THE TRIAL JUDGE DID NOT ABUSE HIS DISCRETION IN FINDING THAT THE OFFICERS DID NOT USE EXCESSIVE FORCE

■ ¶ 11 The Defendant argues that the trial court erred in rejecting her claim that she was justified in using physical force because the officer unlawfully employed excessive force in subduing her. A person may not use physical force to resist an arrest "unless the physical force used by the peace officer exceeds that allowed by law." A.R.S. § 13–404(B) (1989). A peace officer employs unlawful physical force in detaining a person if the force used exceeds that which a reasonable person would believe immediately necessary to effect the detention. A.R.S. § 13–409(1).

¶ 12 The trial court found that the officer placed her arm around the Defendant's neck but concluded that this did not constitute unlawful physical force, noting that the "[D]efendant did not testify that she was unable to breathe or that she was about to pass out." By every account, the Defendant's attempt to flee, and the officer's attempts to restrain her, happened very quickly.

■ ¶ 13 The Defendant challenges these factual findings arguing that the officers could have restrained her "without choking her." We consider all of the evidence presented to the trial court—and all the inferences to be drawn from that evidence—in

the light most favorable to sustaining the court's findings. *See State v. Arredondo*, 155 Ariz. 314, 316, 746 P.2d 484, 486 (1987); *State v. Hall*, 129 Ariz. 589, 593, 633 P.2d 398, 402 (1981). We will not reverse the trial court's decision if substantial evidence supports it. *State v. Atwood*, 171 Ariz. 576, 597, 832 P.2d 593, 614 (1992). "Substantial evidence" exists if reasonable persons may fairly differ as to whether certain evidence establishes a fact in issue. *Id.* Thus, to set aside the trial court's findings in this case, "it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support" the court's conclusion that the officer acted reasonably in wrapping her arm around the Defendant's neck in an attempt to subdue her. *See Arredondo*, 155 Ariz. at 316, 746 P.2d at 486. There was substantial evidence to support the trial court's finding that the officer did not use unlawful excessive force in subduing the Defendant.

¶ 14 The judgment of conviction is affirmed.

CONCURRING: EDWARD C. VOSS, Presiding Judge, and JAMES E. SULT, Judge.