NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

CHRISTOPHER CHARLES MOLINAR, *Appellant*.

No. 1 CA-CR 16-0530
FILED 8-31-2017

Appeal from the Superior Court in Maricopa County
No. CR2015-002322-001
The Honorable Joan M. Sinclair, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eric Knobloch
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Nicholaus Podsiadlik
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge James P. Beene and Chief Judge Samuel A. Thumma joined.

---

**J O H N S E N**, Judge:

**¶1**       Christopher Charles Molinar appeals his convictions and sentences for aggravated assault, resisting arrest, shoplifting and refusing to provide a truthful name when lawfully detained.  We affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**       Two Mesa police officers responded to a call from a department store about a belligerent and uncooperative shoplifting suspect.[1]  When police arrived, they asked Molinar why he was causing trouble, and he responded, "I am trouble."  Molinar refused to give officers his name, saying only, "I am a chief."  He clenched his jaw and his fists, glared at one of the officers, and "was flipping his hands up kind of in 'let's fight' gesture."  He refused to provide his name even after the officers told him he was required to do so by law.

**¶3**       Molinar also failed to comply when the officers told him he was under arrest and ordered him to put his hands behind his back.  After each of the officers grabbed one of his wrists, he pulled away, ran toward the door and threw a punch.  For nearly a minute and despite several strikes to his head, Molinar continued to fail to comply with the officers' commands to put his hands behind his back.  Finally, after one of the officers twice Tased Molinar's calf, each time for several seconds, another officer was able to handcuff Molinar.  The struggle was captured on surveillance camera videos, which were admitted at trial.

**¶4**       At trial, the defense did not present any witnesses, but argued Molinar acted in self-defense in the face of unreasonable and excessive use of force by the officers.  The jury convicted Molinar of reasonable apprehension aggravated assault, resisting arrest, shoplifting and refusing to give a truthful name to officers when lawfully detained, but found him

---

[1]       We view the evidence in the light most favorable to supporting the conviction.  *State v. Boozer*, 221 Ariz. 601, 601, ¶ 2 (App. 2009).

not guilty of touching aggravated assault. The jury also found the State had not proven aggravating circumstances of infliction or threatened infliction of serious physical injury and causing physical, emotional or financial harm to the victims. The court found Molinar had three historical prior felony convictions and sentenced him as a repetitive offender to concurrent presumptive prison terms, the longest of which was five years. Molinar filed a timely delayed notice of appeal. This court has jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2017), 13-4031 (2017) and -4033(A) (2017).[2]

## DISCUSSION

### A.  Expert Witness Disclosure.

¶5          Before trial, Molinar moved to compel disclosure of various contacts with two police officers the State had identified as testifying experts "regarding their opinions related to this case." One of these experts ultimately did not testify at trial; the other did. With respect to the expert who did not testify at trial, Molinar sought an email from the prosecutor asking the expert to create a supplemental report on use of force, an email from one of the officers involved in Molinar's arrest asking for the expert's opinion on use of force, and an email from the Mesa police legal department asking the expert to review videos of the encounter. With respect to the expert who did testify at trial, Molinar sought an email from a police lieutenant asking the expert to review the case and another email from police to the expert asking him to prepare a supplemental report. Molinar sought all of the referenced emails, along with any recordings or notes of a meeting between the two experts and their supervisor and the prosecutor.

¶6          At the final trial management conference, the superior court asked the prosecutor to respond orally to the motion, which had been filed that morning. The prosecutor noted she had not fully reviewed the motion but that it appeared to seek "work product." After an ensuing unrecorded bench conference, the court denied the motion with respect to "recordings and e-mails between [the prosecutor] and [the State's] expert witnesses" on the basis that they were "not subject to disclosure as work product."

¶7          On appeal, Molinar does not present argument concerning the emails to the two experts, nor does he argue the State failed to produce any reports created by the experts. Instead, he argues the court abused its

---

[2]          Absent material revision after the date of the offense, we cite a statute's current version.

discretion in declining to order the State to produce recordings or statements by the experts. He asserts that once the State elects to call an expert as a witness, any material related to the expert's testimony is no longer protected under the work product doctrine. Alternatively, Molinar argues that pursuant to Arizona Criminal Procedure Rules 15.4(b)(1) and 15.5(b), the court should have ordered the materials produced in redacted form.

¶8            Under Rule 15.1, the State must disclose all "relevant written or recorded statements" of its witnesses and "[a]ny completed written reports [and] statements" made by its expert witnesses. Rule 15.4(a)(1) defines "statement" as a "writing signed or otherwise adopted or approved by a person," a recording, or a "writing containing a verbatim record or a summary of a person's oral communications." We review rulings on discovery issues for abuse of discretion. *State v. Connor*, 215 Ariz. 553, 557, ¶ 6 (App. 2007).

¶9            Before the superior court, the State argued that the material sought—which it described as its unrecorded "discussion with the officers"—was covered by the work product doctrine. The work product doctrine, codified as applicable here in Rule 15.4(b)(1), provides: "(1) *Work Product.* Disclosure shall not be required of legal research or of records, correspondence, reports or memoranda to the extent that they contain the opinions, theories or conclusions of the prosecutor, members of the prosecutor's legal or investigative staff or law enforcement officers . . . ." *See also* Ariz. R. Crim. P. 15.4(b)(1) cmt. The work product doctrine, however, "is not absolute"; among other things, a party "may waive all or part of the protection by electing to present the expert as a witness." *State ex rel. Corbin v. Ybarra*, 161 Ariz. 188, 193 (1989).

¶10           The court ruled on Molinar's motion at an unrecorded bench conference, and clarified on the record only that it was denying the motion "as far as these recordings and e-mails between you and your expert witnesses." The prosecutor had previously stated on the record, however, that the prosecutor's meeting with the expert witnesses was not recorded.

¶11           Based on the record before us, we are unable to conclude that the court erred. Recordings aside, the record does not show whether any writings existed memorializing the prosecutor's meeting with the experts. Assuming the existence of notes or other writings concerning the meeting, even if the State had waived the protection of the work product doctrine with respect to the experts, *see Emergency Care Dynamics, Ltd. v. Superior Court*, 188 Ariz. 32, 35-36 (App. 1997), the court later precluded expert

testimony concerning use of force by the officers who arrested Molinar. For that reason, statements by the experts concerning use of force by officers involved in Molinar's arrest were no longer material to their testimony. *See generally United States v. Nobles*, 422 U.S. 225, 239-40 (1975).[3] Accordingly, Molinar has not shown that the superior court abused its discretion in denying the motion to compel.[4]

## B. Denial of Disclosure of "Blue Team" Reports.

¶12 Molinar next argues the superior court erred in denying his motion to compel disclosure of use-of-force reports compiled by the Mesa Police Department's "Blue Team," as relevant to the victim officers' purported bias and motivation to secure a conviction in this case.[5]

¶13 In denying the motion to compel, the superior court concluded that *State v. Superior Court (Cook)*, 132 Ariz. 374 (App. 1982), was dispositive. *Cook* held that prior complaints concerning assaultive conduct on the part of the arresting officers were inadmissible under Arizona Rule of Evidence 404(b) to show propensity, under Rule 405(a) to show a character trait that is an essential element of a defense, or under Rule 608(b) to impeach the credibility of the officers. *Id.* at 376.

¶14 The court did not abuse its discretion in denying Molinar's motion to compel the "Blue Team" reports. Molinar contends *Cook* did not

---

[3] The State chose to call only one of its two experts to testify, and that expert was not permitted to give an opinion about use-of-force by the officers who arrested Molinar.

[4] Moreover, the record fails to affirmatively show whether any of the material sought by the defense actually existed and what specific material the court concluded was protected by the work product doctrine and why, with the result that we have no basis on which to find that the court abused its discretion. Because the discussion at the bench conference was not recorded, and the defense failed to memorialize it afterward or seek an *in camera* review of the material that was the subject of the motion to compel, we presume the record supports the court's ruling. *State v. Zuck*, 134 Ariz. 509, 512-13 (1982).

[5] The prosecutor stated that the "Blue Team report is simply a records database management used by Mesa Police Department to record use of force reports. It is unclear if they're by DR number, if it's just a tally system, what all would be in that report system that they use to—as a database."

address his argument that the use-of-force reports were relevant to the officers' bias and motivation to secure a conviction. We are not persuaded, however, that the reports would have been probative to any bias or motivation of the officers in this case. Whether those officers had prior use-of-force incidents memorialized in the Blue Team reports did not make it more or less likely that either of them had a bias or motive to secure a conviction in this case.

## C.      Use of Term "Victim" at Trial.

¶15      Molinar argues the superior court violated his right to a presumption of innocence by allowing the prosecutor to refer during trial to the arresting officers as "victims." The court denied Molinar's motion *in limine* to preclude use of the term "victim" at trial, but added, "Certainly they're not going to be—doesn't need to be an overuse of the word victim, but I'm not going to preclude the State from using the word victim if it should come up during the trial."

¶16      Although we ordinarily review evidentiary rulings for abuse of discretion, we review evidentiary rulings that implicate a defendant's constitutional rights *de novo*. *State v. Ellison*, 213 Ariz. 116, 129, ¶ 42 (2006).

¶17      The Arizona Constitution's Victims' Bill of Rights guarantees crime victims a number of rights, including the right to be present at all criminal proceedings and the right to refuse a defendant's request for an interview. Ariz. Const. art. 2, § 2.1(A)(3), (5). Among the statutes enacted in support of those rights is A.R.S. § 13-4433(F) (2017), which states, "If the defendant or the defendant's attorney comments at trial on the victim's refusal to be interviewed, the court shall instruct the jury that the victim has the right to refuse an interview under the Arizona Constitution." Here, defense counsel asked each of the officers on cross-examination if he had talked to the prosecutor multiple times before trial, but did not speak to defense counsel. On re-direct, the prosecutor in turn confirmed with the officers that they were victims in this case, and that they were aware that one of their rights as victims under state law was the right to refuse a defense interview.

¶18      Although the court had agreed before trial to consider any curative instruction offered by Molinar on the victim issue, defense counsel did not offer any such instruction. The court gave a final instruction at the State's request that "[t]he law affords a victim the right to refuse an interview or other discovery requests by the defendant, the defendant's attorney, or other person acting on behalf of the defendant." The court,

however, also instructed the jury that Molinar was presumed innocent, and the State had the burden of proving his guilt beyond a reasonable doubt. The jury is presumed to have followed these instructions. *State v. Newell*, 212 Ariz. 389, 403, ¶ 68 (2006).

**¶19** Molinar cites no authority supporting his argument that limited reference by the prosecution to a complaining witness as a "victim" during trial may violate a defendant's due-process rights. Nor is this a situation in which the superior court repeatedly characterized the officers as victims in a manner that might have presupposed that a crime occurred. On this record, the superior court did not err.

**D. Reference to Officer's Military Service.**

**¶20** Molinar argues the superior court erred by allowing the prosecutor to elicit testimony that one of the police officers had ten years of military service, arguing it was not relevant to any issue at trial. The court denied Molinar's motion *in limine* to preclude any reference to the prior military experience, cautioning, however, that any such reference should be "just . . . real brief." At trial, the State asked the officer if he had an occupation before becoming a police officer, and the officer responded that he had served four years in the United States Marine Corps, and after that, had served six years in the military reserves.

**¶21** Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Ariz. R. Evid. 401. Rule 403 permits the superior court to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. The court has considerable discretion in determining the relevance and admissibility of evidence, and we will not disturb its ruling "absent a clear abuse of that discretion." *State v. Amaya-Ruiz*, 166 Ariz. 152, 167 (1990). In reviewing a superior court's ruling, we "must look at the evidence in the light most favorable to the proponent, maximizing its probative value and minimizing its prejudicial effect." *State v. Kiper*, 181 Ariz. 62, 66 (App. 1994).

**¶22** The court did not abuse its discretion in allowing the brief reference to the officer's military career. The officer's prior career was relevant background to introduce the officer to the jury and to show what experience and training he might have brought to the events that day. Moreover, the court instructed the jury that it must consider the testimony of law enforcement officers the same as it judged the testimony of other witnesses. The jury ultimately acquitted Molinar of one of the counts of

aggravated assault against this victim, demonstrating its careful and proper consideration of the evidence. *See State v. Stuard*, 176 Ariz. 589, 600 (1993). We decline to reverse on this basis.

**E.      Expert Testimony on Use of Force.**

**¶23**      Molinar argues the superior court abused its discretion in allowing expert testimony on police training in use of force, because it was not helpful or relevant and effectively allowed the expert to convey to the jury that the officers' use of force was reasonable even though the court's pretrial ruling precluded the State from offering an expert opinion on that issue.

**¶24**      Before trial, Molinar moved pursuant to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and Rule 702 to determine whether the State's expert witnesses were properly qualified, whether their opinions were based on sufficient facts and data, and whether their testimony would help the jury understand the evidence. At the hearing on the motion, Molinar argued that expert testimony on police training in use of force was not relevant "because we're not seeking to attack the training of the officers" and because the jurors could review the video showing the struggle and determine whether the use of force was reasonable without help from an expert. The State argued that the expert opinions would be relevant to the anticipated defenses of self-defense and excessive use of force. The superior court ruled the experts could testify on police training in use of force but precluded the experts from testifying on the ultimate issue of the reasonableness of the officers' use of force in this incident.

**¶25**      The State's expert testified police were trained to assess nonverbal cues to determine whether they should expect resistance, and to assess the "totality of the circumstances" in determining whether and what type of force was necessary. He described when strikes to the head or face might be advisable and why, testified that an officer should not get "physical" with a suspect without backup "unless it's an emergency dictated by [the suspect]," and "when it is time to go hands-on, you need to be committed. You need to expect that they will possibly resist, and be ready to escalate very quickly, and deescalate very quickly when—if you gain compliance and/or control." He testified the purpose of a strike by an officer is "[t]o gain control" and "to end the confrontation as quickly as possible," not to injure the person.

**¶26**      We review a "trial court's ruling on the admissibility of expert testimony for an abuse of discretion, viewing the evidence in the light most

favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *State v. Ortiz*, 238 Ariz. 329, 333, ¶ 5 (App. 2015) (citations and internal punctuation omitted).

**¶27**         The superior court acted well within its discretion in finding that the expert's testimony would be relevant and would "help the trier of fact to understand the evidence or to determine a fact in issue." Ariz. R. Evid. 702(a). Whether the officers' use of force was reasonable was relevant to Molinar's justification defense, because a person is not justified in using physical force to resist an arrest "unless the physical force used by the peace officer exceeds that allowed by law," A.R.S. § 13-404(B)(2) (2017), and an officer's use of force is unlawful if it is "unnecessary or unreasonable." A.R.S. § 13-3881(B) (2017).

**¶28**         The expert's testimony on the factors officers are trained to evaluate in determining what type of force to use and when was helpful to the jury in evaluating the officers' use of force in this case, as depicted on the videos and as described by the officers themselves. In context, moreover, the expert's testimony did not violate the court's ruling precluding him from offering an opinion on the use of force in this instance.

**¶29**         Moreover, the court instructed the jury that "[e]xpert opinion testimony should be judged just as any other testimony," and the jurors "should give it as much credibility as you think it deserves considering the witness's qualifications and experience, the reasons given for the opinions, and all the other evidence in this case." For all these reasons, the court did not abuse its discretion in allowing the expert to testify.

**¶30**         Molinar also argues summarily that the court abused its discretion in denying his motion for mistrial during this expert's testimony. A declaration of mistrial is "the most dramatic remedy for trial error and should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted." *State v. Dann,* 205 Ariz. 557, 570, ¶ 43 (2003). In determining whether to grant a mistrial based on a witness's testimony, the superior court should consider whether the testimony called the jurors' attention to matters that they would not be justified in considering in reaching a verdict and the probability under the circumstances that the testimony influenced the jurors. *State v. Bailey*, 160 Ariz. 277, 279 (1989). "We will not overturn a trial judge's decision to deny a motion for mistrial unless we find an abuse of discretion. And because the trial judge is in the best position to assess the impact of a witness's statements on the jury, we defer to the trial judge's discretionary determination." *Dann*, 205 Ariz. at 570, ¶ 43 (citations omitted).

¶31 Molinar initially moved for a mistrial after the State asked its expert whether he felt it was "necessary" to talk to the officers about the incident. The court denied the motion, reasoning that the State had not used the word "necessary" in the context of use of necessary force. Molinar later renewed his motion for mistrial on the ground that the expert had testified he had an opinion about whether the officers' use of force was reasonable. Molinar argued that even though the expert was not permitted to state that opinion, the jury would infer the expert's opinion was that the officers had not used unreasonable force. The court denied the mistrial, explaining that "everyone in this room has an opinion." The court did not abuse its discretion in denying a mistrial on either basis.

## F. Jury Instruction on "Reasonable Officer" Standard.

¶32 Finally, Molinar argues the court abused its discretion in instructing the jury as part of the self-defense instruction that the use of force is unlawful if "a reasonable officer on the scene" would find it inappropriate.

¶33 The court gave the jury the standard instruction on use of physical force in self-defense, deleting all references to use of deadly physical force, and including the following language pursuant to A.R.S. § 13-404(B)(2) (2017):

> The threat or use of physical force is not justified to resist an arrest that the defendant knew or should have known was being made by a peace officer or by a person acting in a peace officer's presence and at the peace officer's direction, whether the arrest was lawful or unlawful, unless the physical force used by the peace officer exceeded that allowed by law.

The court also instructed the jury pursuant to A.R.S. § 13-3881 (2017):

> An arrest is made by actual restraint of the person to be arrested or by [such] person's submission to the custody of the person making the arrest. No unnecessary or unreasonable force shall be used in making the arrest, and the person arrested shall not be subjected to any greater restraint [than] necessary for the person's detention.

¶34 Over Molinar's objection, the court also added the State's suggested instruction: "Whether or not an officer's use of force was reasonable must be judged from the perspective of a reasonable officer on

the scene." Molinar's objection was that the instruction would be "invading the province of the jury."

**¶35**          We review a superior court's decision to give a jury instruction for abuse of discretion. *State v. Garza*, 216 Ariz. 56, 66, ¶ 42 (2007). We review *de novo* "whether jury instructions correctly state the law." *State v. Bocharski*, 218 Ariz. 476, 487, ¶ 47 (2008).

**¶36**          Molinar argues for the first time on appeal that the instruction misstates the law that provides that the use of force must be viewed from the standpoint of a "reasonable person," and alternatively, the instruction was misleading because it was incomplete. Molinar failed to object to the instruction at trial on these grounds, thereby limiting our review for fundamental error only. *See State v. Henderson,* 210 Ariz. 561, 568, ¶ 22; *State v. Bolton,* 182 Ariz. 290, 304 (1995) (objection on one ground does not preserve objection on another ground). On fundamental error review, the defendant has the burden of proving that the court erred, that the error was fundamental in nature, and that he was prejudiced thereby. *Henderson*, 210 Ariz. at 567, ¶ 20.

**¶37**          We are not persuaded that the court erred, much less fundamentally erred, in giving the instruction at issue. First, for his argument that the use of force must be viewed from the perspective of a "reasonable person," Molinar relies on A.R.S. § 13-409(1) and *State v. Yoshida*, 195 Ariz. 183 (App. 1998), in which this court merely reiterated the language of A.R.S. § 13-409(1). *Id.* at 185, ¶ 11. Section 13-409, which provides a justification defense for an officer's use of physical force in arresting a suspect, is not directly at issue in this case. Moreover, even if it were, the standard instruction on A.R.S. § 13-409 provides that the use of force is judged from the perspective of a "reasonable person in the situation," Rev. Ariz. Jury Instr. ("RAJI") Stat. Crim. 4 at 71, which, for all practical purposes, is no different from "a reasonable officer at the scene."

**¶38**          The State cited, and the court relied on, *Graham v. Connor*, 490 U.S. 386, 396 (1989), in which the Court held that in a claim under 42 U.S.C. § 1983 that law enforcement officials used excessive force in an arrest, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." The Supreme Court reasoned in that case that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

¶39  We cannot say that the superior court here erred, much less fundamentally erred to Molinar's prejudice, in applying this standard to the use of force under A.R.S. § 13-3881. The statute on its face governs the conduct of police officers in making an arrest. *See* A.R.S. § 13-3881. In determining whether unreasonable force was used, the focus must be on a "reasonable person in the situation," which in this case means a "reasonable officer on the scene." Nor do we believe that the standard was misleading simply because it did not include more specific language from *Graham* to the effect that proper application of the test for reasonableness under the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. These specifics were a matter for argument, not instruction. We conclude the court did not err, much less fundamentally err, in giving this instruction.

## CONCLUSION

¶40  For the foregoing reasons, we affirm Molinar's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED: AA