IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | 2 CA-CR 2007-0065 |
| Appellee, | ) | DEPARTMENT B |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| FRANK JOSEPH SARULLO, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-20053625

Honorable Howard Hantman, Judge

AFFIRMED

---

Terry Goddard, Arizona Attorney General
  By Kent E. Cattani and Laura P. Chiasson                                    Tucson
                                                                  Attorneys for Appellee


Law Office of Richard Luff, PLLC
  By Richard R. Luff                                                          Tucson

and

The Diodati Law Firm, P.C.
  By Andrew D. Diodati                                                        Tucson
                                                                  Attorneys for Appellant

---

E S P I N O S A, Judge.

¶1 After a jury trial, Frank Sarullo was convicted of two counts of first-degree burglary and one count each of aggravated assault and theft. The trial court sentenced him to concurrent, presumptive prison terms, the longest of which was 10.5 years. On appeal, Sarullo raises several issues that he contends require the reversal of his convictions and sentences or entitle him to a new trial. For the reasons below, we affirm.

**Factual and Procedural Background**

¶2 We view the evidence in the light most favorable to sustaining the convictions. *See State v. Mangum*, 214 Ariz. 165, ¶ 3, 150 P.3d 252, 253 (App. 2007). In 2001, Sarullo and S. began a romantic relationship. At some point, S. gave Sarullo a key to her house, where she lived with her thirteen-year-old daughter, L. In May 2005, S. told Sarullo she was ending their relationship. Sarullo became despondent and told S. he was considering suicide and "possibly taking [her] with him." Around this time, S. asked Sarullo to return the key to her house. He did so, but he first made a copy of the key.

¶3 On August 25, 2005, S. awoke at approximately 3:00 a.m. and saw Sarullo standing in the doorway of her bedroom. He turned on the overhead light, walked toward her, pointed a gun at her, and demanded she tell him why she had "treated [him] so badly." S. pleaded, "[N]o, . . . don't do this"; Sarullo said he had not decided whether he would "just kill himself" or would "take [her] with him." He then told S. he wanted to discuss their relationship and wanted to "work things out." Afraid for her life, S. promised she would go to relationship counseling with him and, if he put down the gun, she would not call the police.

2

Sarullo laid the gun on S.'s bed and left the house. S. saw that the gun was hers—she had stored it on the top shelf of her linen closet—and that it was loaded. She did not keep the gun loaded, however, or have any ammunition in her home.

¶4 S. dialed 911 and Tucson police officer Brian Moore responded to the scene. He interviewed S. and, later that morning, he interviewed Sarullo at the police station. Sarullo told Moore he had entered S.'s home on Wednesday, August 24, using the key he had copied, and he had taken S.'s gun and purchased ammunition at a store. He admitted returning to her home the next morning, August 25, and pointing the revolver "in her general direction." He conceded S. had been frightened. He also told Moore he had intended to commit suicide in front of S., stating: "I felt that . . . it would have a more psychological impact doing it with her gun and have her see it."

¶5 In September, Sarullo was charged with the following offenses in a four-count indictment: count one alleged first-degree burglary for the entry into S.'s home that occurred on Wednesday, August 24; count two alleged first-degree burglary for the entry that had occurred on Thursday, August 25; and the remaining counts of aggravated assault and theft of S.'s handgun. After a jury trial, Sarullo was convicted of all charges and sentenced as set forth above. This appeal followed.

3

**Discussion**

**i.  Corpus Delicti Rule**

¶6          Sarullo first argues the state presented insufficient evidence of the corpus delicti for counts one and four, which charged him with the burglary and theft that occurred on August 24.  Sarullo did not raise this issue below, and we therefore review only for fundamental error.  *See State v. Alatorre*, 191 Ariz. 208, ¶¶ 12-13, 953 P.2d 1261, 1265 (App. 1998).  "'Fundamental error is that which goes to the heart of the defendant's case or takes from him a right essential to his defense.'"  *See State v. Phillips*, 202 Ariz. 427, ¶ 48, 46 P.3d 1048, 1058 (2002), *quoting State v. Valdez*, 160 Ariz. 913-14, 770 P.2d 313, 317-18 (1989).  Such error must also be prejudicial.  *State v. Henderson*, 210 Ariz. 561, ¶ 26, 115 P.3d 601, 608 (2005).

¶7          "A defendant may not be convicted of a crime based on an uncorroborated confession without independent proof of the corpus delicti, or the 'body of the crime.'"  *State v. Morgan*, 204 Ariz. 166, ¶ 15, 61 P.3d 460, 464 (App. 2002), *quoting State v. Gillies*, 135 Ariz. 500, 506, 662 P.2d 1007, 1013 (1983).  The corpus delicti rule requires that, before a defendant's statements may be admitted as evidence of a crime, the state must provide independent proof that a crime was committed and that someone was responsible for the offense.  *See State v. Rubiano*, 214 Ariz. 184, ¶ 6, 150 P.3d 271, 272-73 (App. 2007).  The purpose of the rule is to prevent a person from being convicted based solely on a false confession that may have been the result of the person's mental instability or obtained through

4

improper police procedures. *See id.* ¶ 7. "Only a reasonable inference of the corpus delicti need exist before a confession may be considered." *Gillies*, 135 Ariz. at 506, 662 P.2d at 1013.

**¶8** Sarullo contends his statements to Moore were the only evidence of the burglary and theft on August 24. The state responds that Sarullo's admissions to those offenses were corroborated by S.'s testimony that the gun Sarullo possessed on August 25 was loaded and that she did not keep ammunition in the house. The state argues, "[f]rom this evidence, a reasonable inference could be made that [Sarullo] entered [S.'s] house at some point prior to August 25, 2005, took the unloaded gun for the purpose of purchasing ammunition, and returned to [S.'s] home on August 25, 2005." Sarullo counters that the only reasonable inference that may be drawn from S.'s testimony is that Sarullo obtained and loaded S.'s gun on August 25, just before entering her bedroom.

**¶9** Although factually dissimilar from this case, we find our decision in *State v. Morgan*, 204 Ariz. 166, 61 P.3d 460 (App. 2002), instructive on this issue. There, the defendant confessed to police that he had engaged in various sexual acts with a minor, including oral sexual contact. *Id*. ¶ 6. He was then charged with, *inter alia*, sexual conduct with a minor by forcing her to have oral sexual contact with him. *Id*. ¶ 7. During the trial, the minor did not testify about any oral sexual contact she had had with the defendant. *Id*. ¶ 23. Her testimony, however, as well as that of another witness and physical evidence collected from the minor's body, corroborated the defendant's admissions to other types of sexual

5

contact he had with the victim.  *Id.*  In finding there was sufficient evidence of the corpus

delicti, independent of the defendants' statement, to support the charge of oral sexual contact,

we noted that when a confessed incident was "closely allied in time and circumstance" to an

independently corroborated offense, "the trustworthiness of [the] confession as a whole was

sufficiently established."  *Id.* ¶ 19, *quoting Drumbarger v. State*, 716 P.2d 6, 12 (Alaska Ct.

App. 1986) (alteration in *Morgan*).  We then concluded:

> Independent evidence established the commission of several
> sexual crimes closely related to the [oral] sexual conduct.
> Although, absent [the defendant's] confession, the evidence did
> not show that [the minor] and [the defendant] had any oral sexual
> contact, the confession was sufficiently corroborated to eliminate
> any concern that it could be untrue and, thus, supported a
> 'reasonable inference' that the offense had occurred.

*Id*. ¶ 23; *see also Alatorre*, 191 Ariz. 208, ¶ 12,  953 P.2d at 1261, 1265 (reasonable inference

of corpus delicti sufficient).

¶10        Here, Sarullo told Moore he had entered S.'s home on August 24, taken her gun,

and entered again on August 25.  Although there was no evidence, apart from Sarullo's

confession, of the August 24 burglary and theft, there was uncontradicted evidence of the

burglary and aggravated assault on August 25.  Thus, as in *Morgan*, there was independent

evidence to establish the commission of crimes "closely related" to the August 24 burglary

and theft.  *See id*.  Moreover, Sarullo told S. on August 25 that he had entered her home

earlier and taken her gun, and, as the state points out, S. did not keep the gun loaded or have

ammunition in her home but the gun was loaded on August 25.  From these facts, there is little

6

risk Sarullo's convictions on counts one and four were based on a false confession. Accordingly, we find his admission to the August 24 burglary and theft sufficiently corroborated and that the evidence supported a reasonable inference that he committed those offenses.[1]

**ii. Intent to Deprive**

¶11 Sarullo next argues there was insufficient evidence to support counts one and four because there was no evidence he intended to permanently deprive S. of her revolver. He claims "[t]he undisputed evidence shows [he] entered the alleged victim's home on 8/24/05 intending to take her revolver, not to permanently deprive her of it, but to later commit suicide in front of her with her gun." In support of his argument, Sarullo notes that during his interview with Moore he stated: "[W]ithin the past few weeks, I seriously contemplated committing suicide, and I felt that . . . it would have a more psychological impact doing it with her gun and have her see it."

¶12 We agree with Sarullo that counts one and four, based on his theft of S.'s gun, required the state to prove he intended to permanently deprive her of her property. *See* A.R.S. §§ 13-1507, 13-1508 (person commits burglary by entering residential structure with intent to commit any theft or felony therein); § 13-1802(A)(1) (person commits theft by knowingly controlling property of another with intent to deprive owner of such property). Contrary to

---

[1]Because we find there was sufficient evidence of the corpus delicti in this case, we decline the state's invitation to consider whether the common law corpus delicti rule "conflicts with Arizona law."

7

Sarullo's assertion, however, this intent could be inferred from evidence at trial. *See State v. Edgar*, 126 Ariz. 206, 209, 613 P.2d 1262, 1265 (1980) (intent to permanently deprive may be established by circumstantial evidence).

¶13        S. testified that, after she and Sarullo had ended their relationship, he said he was considering killing himself and "taking [her] with him." She also testified that Sarullo had pointed her gun directly at her, that she had been "looking down the barrel of the gun," and that he again told her he was considering "tak[ing her] with him." From this evidence, the jury could have found beyond a reasonable doubt Sarullo had taken the gun with the intent of using it to kill S. and, thus, had intended to permanently deprive her of it. *See State v. Cox*, 217 Ariz. 353, ¶ 22, 174 P.3d 265, 269 (2007) (evidence must permit rational trier of fact to find elements of crime beyond reasonable doubt). Moreover, as the state points out, the intent to permanently deprive could be inferred from the fact Sarullo had initially taken the weapon without her consent. *See State v. Jackson*, 101 Ariz. 399, 402, 420 P.2d 270, 273 (1966) (intent to permanently deprive can be inferred from unexplained or unsatisfactory explanation of taking property without consent).

**iii.  Interview of L.**

¶14        Before trial, Sarullo filed a motion to depose L., S.'s thirteen-year-old daughter, who had been in the home the night of the incident. The state responded that he was precluded from doing so by Arizona's Victims' Rights Statute, A.R.S. § 13-4433(A), which provides, in relevant part, "the victim [of a crime] shall not be compelled to submit to an

8

interview on any matter . . . that is conducted by the defendant, the defendant's attorney or an agent of the defendant." "Victim" is defined as "a person against whom the criminal offense has been committed." A.R.S. § 13-4401(19). After a hearing, the trial court denied Sarullo's motion, a decision he now challenges. Because the issue raised involves a question of statutory interpretation, we review the trial court's decision *de novo*. *See Lincoln v. Holt*, 215 Ariz. 21, ¶ 4, 156 P.3d 438, 440 (App. 2007).

¶15 As noted above, § 13-4433 provides that a victim of a crime may refuse to be interviewed by the defendant or the defendant's attorney. *See also* Ariz. Const. art. II, § 2.1(A)(5). The issue is whether L., who was present in the home during the burglary, may be considered a "victim" of the burglary for purposes of § 13-4433. Sarullo argues burglary "is a crime against a structure and not a person" and he suggests burglary is therefore a victimless crime. We disagree. Although we have found no cases that directly address who is the victim of a burglary, Arizona courts repeatedly have referred to persons as the "victims" of burglaries. *See, e.g., State v. Blackmore*, 186 Ariz. 630, 631, 925 P.2d 1347, 1348 (1996); *State v. Edwards*, 154 Ariz. 8, 10, 739 P.2d 1325, 1327 (App. 1986).

¶16 Historically, burglary laws are rooted in the recognition of the danger an intruder presents to the occupants of a residence. *See* Model Penal Code § 221.1 cmt.2 at 67 (Model Penal Code limits burglary to "circumstances especially likely to terrorize occupants"); *see also People v. Statler*, 219 Cal. Rptr. 713, 718 (Cal. Ct. App. 1985) (burglary laws based on recognition of danger to personal safety of occupants). This concern is

9

reflected in Arizona's burglary statutes, which provide a higher offense level for burglary of a residential structure than a non-residential structure and the highest offense level for a burglary committed while armed. *See* A.R.S. §§ 13-1506, 13-1507, 13-1508.[2] We find the occupants of a burglarized home, therefore, may be fairly characterized as "victims" of the burglary. *Cf. State v. Wilson*, 150 P.3d 144, 150 (Wash. App. 2007) ("the purpose of a burglary statute is to protect the occupancy and habitation of a residence"); *State v. Davis*, 954 P.2d 325, 328 (Wash. App. 1998) (finding both occupant and guest victims of a burglary).

¶17 In this case, L. was home at the time of the burglary, asleep in the bedroom next to S.'s bedroom, where the assault occurred. She was therefore a victim of the burglary. Accordingly, we conclude L. had the right to refuse to submit to an interview conducted by Sarullo or his attorney, *see* A.R.S. § 13-4433, and the trial court did not err in denying Sarullo's motion to depose her. *See also* Ariz. Const. art. II, § 2.1(A)(5).

¶18 Sarullo also argues L. cannot be a "victim" because she was not named in the indictment and claims, without citation to authority, that "properly and immediately identifying the 'victim' in a criminal prosecution is imperative to satisfying minimum standards of due process." We disagree. In Arizona, due process requires fundamental fairness, *State v. Melendez*, 172 Ariz. 68, 71, 834 P.2d 154, 157 (1992), which in turn requires that criminal defendants be afforded a meaningful opportunity to present a complete defense,

---

[2]For the same reason, we reject Sarullo's argument that the only victim of a burglary is the person against whom the theft or felony was intended to be committed.

10

*California v. Trombetta*, 467 U.S. 479, 485 (1984). We find nothing fundamentally unfair about the state's failure to name L. as a victim in the indictment, and Sarullo has not stated how this failure affected his ability to present a defense. Moreover, we have found nothing that would have prevented Sarullo from calling L. as a witness during trial. *See State v. Gilfillan*, 196 Ariz. 396, ¶ 19, 998 P.2d 1069, 1075 (App. 2000); *see also State v. Carlos*, 199 Ariz. 273, ¶ 29, 17 P.3d 118, 125 (App. 2001) (Pelander, J., dissenting) (defendant has right to present own witnesses, including right to subpoena victim as witness).

### iv. S.'s Medical Records

**¶19** Before trial, Sarullo moved the court to "order the State to produce [S.'s] medical/counseling records, for the years surrounding the incident of August 24, 2005." Specifically, Sarullo sought information relating to S.'s "inability to carry on healthy productive relationships," any changes in her prescription medication around the time of the incident, and her discussions of the incident with her counselor. After a hearing, the court denied the motion. On appeal, Sarullo contends the court erred in denying him access to that information, claiming it was necessary to his defense that S. "knew the event centered around [Sarullo's] threatened suicide, but she later developed a psychological need to see the event as an assault." We review the court's decision *de novo*. *See State v. Connor*, 215 Ariz. 553, ¶ 6, 161 P.3d 596, 600 (App. 2007).

**¶20** Generally, the victim of a crime has the right to refuse to hand over medical records, pursuant to Arizona's Victims' Bill of Rights. *See State ex. rel Romley*, 172 Ariz.

232, 237-38, 836 P.2d 445, 450-51 (App. 1992). As Sarullo points out, this right is not absolute, and in some cases a victim may be required to produce his or her medical records for an *in camera* inspection by the trial court. *See Connor*, 215 Ariz. 553, ¶ 10, 161 P.3d at 601. The defendant, however, must first show a "reasonable possibility that the information sought by the defendant include[s] information to which [he or] she [is] entitled as a matter of due process." *Id*.

¶21 In this case, Sarullo has not presented a sufficiently specific basis for requiring S. to produce her medical records. Indeed, there is nothing in the record to support his assertion that the medical records would show S. had not initially viewed the incident as an assault and "could have shown there was a reasonable doubt about whether the gun was actually pointed at [her]." When Moore first arrived at the scene, S. told him "[t]he gun was pointed at me," a fact she maintained throughout the trial. And Sarullo himself told Moore during the interview that he had pointed the gun in her direction and that S. had been afraid. Because Sarullo provided the court no reason to believe S's medical records would contain exculpatory evidence, we cannot say the court erred by declining to order their production.

**v. Prosecutorial Misconduct**

¶22 In Sarullo's closing remarks, he argued that, "on some sort of psychological level," S. needed to see his suicide attempt as an assault. In rebuttal, the prosecution noted that, while the burden of proof is on the prosecution, Sarullo failed to call any witnesses to support his theory. Sarullo objected and the trial court struck the statement. The court denied

12

his subsequent motion for a mistrial, finding that the prosecutor's comment was not improper and, in retrospect, should not have been struck. Sarullo now contends that, because the trial court denied his motions to depose L. and for the disclosure of counseling records, the prosecutor's remarks were misconduct and shifted the burden of proof to him. Sarullo also maintains that, although the court sustained his objection to the comment, its failure to issue a curative instruction or to grant a mistrial constituted an abuse of discretion.

¶23    A trial court's denial of a motion for mistrial for prosecutorial misconduct will not be disturbed absent a clear abuse of discretion. *See State v. Blackman*, 201 Ariz. 527, ¶ 41, 38 P.3d 1192, 1203 (App. 2002). To require reversal, prosecutorial misconduct must affect the jury's ability to fairly assess the evidence and be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *State v. Rosas-Hernandez*, 202 Ariz. 212, ¶ 23, 42 P.3d 1177, 1183-84 (App. 2002). Counsel for both sides have "considerable latitude" in closing arguments and a closing remark is unduly prejudicial only when it "calls to the attention of the jurors matters which they would not be justified in considering in determining their verdict." *State v. Sustaita*, 119 Ariz. 583, 593-94, 583 P.2d 239, 249-50 (1979), *quoting State v. Trotter*, 110 Ariz. 61, 65, 514 P.2d 1249, 1253 (1973).

¶24    When a prosecutor comments on a defendant's failure to present evidence to support his or her theory of the case, it is neither improper nor shifts the burden of proof to the defendant so long as such comments are not intended to direct the jury's attention to the defendant's failure to testify. *State v. Martinez*, 130 Ariz. 80, 82-83, 634 P.2d 7, 9-10 (App.

13

1981).  Here, the prosecutor's comments did not refer to Sarullo at all, but rather to his failure to call expert witnesses to support his theory regarding the victim's psychological status. Contrary to Sarullo's assertions, the prosecutor's comment did not unfairly take advantage of the court's denial of his attempts to conduct "psychological discovery."  As the state argued before the trial court, even though Sarullo could not have introduced this particular evidence, he remained free to present an expert to testify generally about a witness's psychological need to re-interpret events.  *See State v. Lujan*, 192 Ariz. 448 ¶ 12, 967 P.2d 123, 127 (1998) (defendant can call expert to testify generally about why victim of child molestation may fabricate accusations).  Accordingly, because we agree there was no prosecutorial misconduct, the trial court did not err in denying Sarullo's motion for a mistrial and no curative instruction was required.

**Disposition**

¶25       Sarullo's convictions and sentences are affirmed.


_____
PHILIP G. ESPINOSA, Judge

CONCURRING:


_____
PETER J. ECKERSTROM, Presiding Judge


_____
GARYE L. VÁSQUEZ, Judge

14