NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

KOYOYA ISSA, *Appellant.*

No. 1 CA-CR 16-0619
FILED 11-14-2017

---

Appeal from the Superior Court in Maricopa County
No.  CR2015-126046-001
The Honorable John Christian Rea, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jason Lewis
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Nicholaus Podsiadlik
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Diane M. Johnsen delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Maria Elena Cruz joined.

---

**J O H N S E N**, Judge:

¶1           Koyoya Issa appeals his conviction and sentence for misconduct involving weapons, a Class 4 felony and repetitive offense.  We affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2           Phoenix police executed a traffic stop of a raised sport utility vehicle Issa was driving.[1]  After officers activated their colored lights to signal Issa to stop, he continued driving for an eighth to a tenth of a mile before he pulled into a strip mall.  As officers followed Issa's vehicle, they saw him leaning over to the right, reaching toward the passenger side three or four times—suggesting he might be attempting to access the glove box of the car.  After Issa's SUV came to a stop, officers saw him make another similar motion toward the right side of the passenger compartment.

¶3           When an officer approached and asked Issa if any weapons were in the vehicle, Issa at first changed the subject.  Asked a second time, Issa glanced toward the right side of the vehicle before denying there were any weapons in the vehicle.  When Issa would not provide identification, the officer removed him from the SUV and walked with him to the rear of the vehicle.  Issa then told the officer that his identification was in the car's driver's-side door panel.  Leaving Issa with the other officer, the first officer then approached the driver's side of the SUV again.  With the driver's-side door open, the officer saw the grip and the top (the "slide") of a handgun sticking out from beneath the front-left side of the front-passenger seat cushion, which was completely detached from the seat frame and raised three to four inches.  A records check later revealed that Issa was a convicted felon and prohibited possessor.

¶4           At trial, Issa's defense was that he had not put the gun in the vehicle and did not know it was there.  Issa's live-in girlfriend testified the handgun was hers, and said she had taken it from a locked box in her closet in their home and put it under the front-passenger seat cushion of the SUV because a rambunctious young nephew was visiting their home.  She testified she had forgotten to tell Issa she had hidden the gun in the vehicle before she asked him to pick up something at the store.  She testified she

---

[1]      We view the evidence in the light most favorable to supporting the conviction.  *State v. Boozer*, 221 Ariz. 601, 601, ¶ 2 (App. 2009).

placed the gun under the side of the front-passenger seat cushion closer to the driver. She further stated the gun did not cause the cushion to bulge.

¶5        Issa's first trial ended in a hung jury. In his second trial, the jury convicted him of misconduct involving weapons. The court sentenced Issa to a presumptive term of 4.5 years in prison. Issa filed a timely notice of appeal. This court has jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2017), 13-4031 (2017) and -4033(A) (2017).[2]

## DISCUSSION

### A.        Purported Prosecutorial Misconduct During Closing Argument.

¶6        Issa argues that during closing argument, the prosecutor repeatedly misstated the law on constructive possession and the burden of proof, depriving him of a fair trial.

¶7        We will reverse a conviction for prosecutorial misconduct only when "(1) misconduct is indeed present; and (2) a reasonable likelihood exists that the misconduct could have affected the jury's verdict, thereby denying [the] defendant a fair trial." *State v. Martinez*, 218 Ariz. 421, 426, ¶ 15 (2008). "To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Morris*, 215 Ariz. 324, 335, ¶ 46 (2007) (quotation omitted). "The misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id.* (quotation omitted).

¶8        Because Issa failed to object at trial to any of the prosecutor's alleged misstatements, we review only for fundamental error. *See State v. Henderson,* 210 Ariz. 561, 568, ¶ 22 (2005). As applied here, that means that Issa has the burden of proving that the prosecutor engaged in misconduct, that the error was fundamental in nature and that he was prejudiced thereby. *Id.* at 567, ¶ 20. Fundamental error is "error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial." *Id.* at 567, ¶ 19 (quotation omitted).

---

[2]        Absent material revision after the relevant date, we cite the current version of statutes.

### 1.    Constructive possession.

**¶9**    "A person commits misconduct involving weapons by knowingly . . . [p]ossessing a deadly weapon . . . if such person is a prohibited possessor."  A.R.S. § 13-3102(A)(4) (2017).  "'Possess' means knowingly to have physical possession or otherwise to exercise dominion or control over property."  A.R.S. § 13-105(34).  As charged here, the State had the burden to prove that Issa knew the gun was in the vehicle and that he exercised control over it.  *State v. Cox*, 217 Ariz. 353, 357, ¶ 26 (2007).  Issa argues that the prosecutor misstated the law by repeatedly arguing that as soon as Issa saw the handgun within his reach in the SUV, he constructively possessed it.

**¶10**    At the beginning of the prosecutor's discussion during closing argument of whether Issa possessed the gun, the prosecutor invited the jury to assume "for the sake of the argument" that everything that Issa's girlfriend said was true.  He then continued:

> The next question that comes to your mind . . . is probably going to be, okay, at what point does the defendant have to knowingly possess the gun for me to vote guilty?  How long does he have to knowingly possess a firearm?  Does it matter when, over the course of his trip in the Expedition, he realizes it's there?
>
> Is there a legal difference between, for example, the defendant climbing into the car, noticing the gun as he gets in, and driving around with it anyway?  Or a difference between that or seeing the red-and-blues come on behind him, glancing over as he is trying to pick up a fuse in the center console of the car and realizing there is a gun stuck under the passenger's seat, lying to the cops about it in a moment of panic?  And the answer to that question is no.
>
> The two are legally indistinguishable because knowing possession happens the instant that you combine those two things: control over the gun, being in a place in which it's within your grasp, within your reach, you can reach over [] and grab it and use it if you wanted to, and knowledge that it's there.  It doesn't have to happen for any length of time.
>
> And so, legally, it doesn't really matter if—whether you believe the defendant climbed into the car with the gun on his hip and tried to stash it after the cops pulled him over

4

or whether he climbed in, [his girlfriend] having, unbeknownst to him, put it there earlier, but realizing at some point during his trip that it was in fact there, and lying to the police about it to try not to get caught.

The prosecutor continued to argue at considerable length that the jury could find Issa guilty if it found that "at some point in that hour-long drive that he is taking from the apartment to being pulled over, as long as, at some point, he realizes [the gun is] there and it's within his grasp."[3]

¶11      A person does not "exercise dominion or control" of contraband merely by knowingly being within reach of it.

> Constructive possession exists when the prohibited property is found in a place under the defendant's dominion or control and under circumstances from which it can be reasonably inferred that the defendant had actual knowledge of the existence of the property. . . . [H]owever, the mere presence

---

[3]      This argument was an alternative to the State's chief theory, which the prosecutor emphasized in his second closing argument. That argument was that Issa not only knew the handgun was in the car but was trying to conceal it by stuffing it under the passenger seat cushion when officers saw him leaning over in that direction before he stopped the car. As the prosecutor reminded the jury, officers found nothing else on the passenger seat of the SUV that Issa might have been reaching for as he repeatedly leaned over in that direction. The prosecutor urged the jury to reject the girlfriend's testimony that she had placed the gun under the cushion, pointing out that the maneuver the girlfriend described (standing outside the passenger side of the raised SUV and reaching over to place the loaded handgun under the cushion so that it was nearer the driver's side, with the butt of the gun protruding toward the driver from beneath the seat cushion) would have been awkward for her to perform. Moreover, the prosecutor argued that the evidence showed that the handgun would have been easily visible to Issa beneath the cushion because as he entered the car from the driver's side and as he sat in the driver's seat, he had the same view of the passenger seat cushion as the officer who approached the car to look for his identification after the stop. (That officer testified that with the driver's side door open, he quickly saw the handgun protruding from beneath the passenger seat cushion, which itself was noticeably raised up.) As the prosecutor said, "We're left with evidence that all points to beyond any reasonable doubt the defendant, knowing from the start that he had a gun, trying to hide it, trying to conceal it, and trying to lie about it."

of a person where prohibited property is found is insufficient
to show the person knowingly exercised dominion or control
over it.

*State v. Cox*, 214 Ariz. 518, 520, ¶ 10 (App. 2007), *aff'd*, 217 Ariz. 353 (2017);
*see Cox*, 217 Ariz. at 357, ¶ 27 n.4 (declining to adopt broad rule that driver
always controls weapons within vehicle); *cf. State v. Ottar*, 232 Ariz. 97, 101,
¶¶ 12–13 (2013) (in a reverse-sting operation, defendant "does not possess
drugs merely by touching or inspecting them," but only when he "exerts
some control over or manifests an intent to control the drugs").

**¶12**        Accordingly, the prosecutor incorrectly stated the law when
he told the jury that it could convict Issa if it found he was aware that the
gun was within his reach in the car for even a brief moment. Although
"[e]ach side is permitted to argue its version of the evidence . . . [t]he state
may not misstate the law to the jury." *State v. Serna*, 163 Ariz. 260, 266 (1990).

**¶13**        Although improper, the argument Issa now challenges did
not go to the foundation of Issa's case, take from him a right essential to his
defense or deny him a fair trial. This is because, as noted, Issa's defense was
that "he did not know at any point that the gun was in the car." During
closing argument, Issa's lawyer argued the gun tucked under the seat
cushion was not easily visible and questioned the suggestion in the officers'
testimony that they saw Issa reach over toward the gun after the officers
activated the patrol car's flashing lights. (Defense counsel argued the
prosecution's theory that Issa leaned over the armrest to stuff the gun under
the seat as police approached was inconsistent with the testimony that
although the officers saw him lean toward the passenger side, they did not
see his shoulders dip down and did not see him bend forward.) During
closing, Issa's lawyer further challenged the officer's statement that the
passenger seat cushion was raised as high as three or four inches, and, more
fundamentally, argued that if the officer could not spot the gun until he
approached the car after Issa had stepped out of the front seat, then "how
was [Issa] able to see it from where he was sitting?"

**¶14**        In addition, and consistent with his defense that he never saw
the gun, Issa did not request, and the court did not give, an instruction on

mere presence, and defense counsel mentioned that "[m]ere presence is not enough" only once in passing in his closing argument.[4]

¶15        Finally, we note that the superior court's instructions that possession required that Issa "knowingly . . . exercise . . . control over" the gun, that the jury must follow its instructions on the law, and that the State had the burden of proving beyond a reasonable doubt each element of the offense minimized any prejudice from the prosecutor's erroneous argument.

¶16        On this record, the prosecutor's argument did not constitute fundamental, reversible error.  Exercise of dominion or control may be proved by direct or circumstantial evidence.  *See State v. Villalobos Alvarez*, 155 Ariz. 244, 245 (App. 1987).  Here, there was ample circumstantial evidence that Issa exerted control over the gun by, at a minimum, reaching over toward the passenger seat where police found the gun shoved under the cushion.

### 2.        Burden of proof.

¶17        Issa also argues the prosecutor improperly shifted the burden of proof by arguing in closing that the jury should apply every bit of skepticism to evidence offered by the defense that it would apply to evidence offered by the State, and by asserting that "[i]t is not enough for the defendant to throw every theory at the wall and see what sticks, but to present something that is reasonable and real that rises to the level of evidence that defeats the overall picture of the case in a reasonable way."

¶18        Issa has failed to meet his burden on fundamental error review.  It is well settled that:

> [w]hen a prosecutor comments on a defendant's failure to present evidence to support his or her theory of the case, it is neither improper nor shifts the burden of proof to the defendant so long as such comments are not intended to direct the jury's attention to the defendant's failure to testify.

*State v. Sarullo*, 219 Ariz. 431, 437, ¶ 24 (App. 2008) (prosecutor did not shift the burden of proof by arguing defendant had failed to call expert witnesses

---

[4]        The court gave the standard jury instruction defining possession.  *See* Rev. Ariz. Jury Instr. ("RAJI") Stat. Crim. 4 at 30, Std. Crim. 37.  The instruction defines "[d]ominion or control" as "either actual ownership of the object or power over it."  *Id*.

to support his theory of defense).  By the same token, it is not improper for the prosecutor to encourage the jury to treat the defendant's evidence with the same skepticism it treats the state's evidence.  *Cf. id.* (acceptable to comment on defendant's lack of evidence).  To the extent, however, that the prosecutor's suggestion in rebuttal argument might have been construed to shift the burden of proof, the court's instructions that the law does not require a defendant to produce evidence or to prove his innocence, and the State has the burden of proof, were sufficient to cure any harm.  *State ex rel. McDougall v. Corcoran*, 153 Ariz. 157, 158–60 (1987) (cautionary instruction that defendant was not required to produce any evidence or prove his innocence was sufficient to cure any harm).

### 3.  Cumulative error.

**¶19**　　　　Finally, we are not persuaded that the "prosecutor intentionally engaged in improper conduct and did so with indifference, if not specific intent, to prejudice the defendant," as necessary to reverse on the basis of cumulative error.  *State v. Gallardo*, 225 Ariz. 560, 568, ¶ 35 (2010).

## B.  Denial of Mistrial.

**¶20**　　　　Issa argues the superior court abused its discretion in denying his motion for a mistrial after a detective testified in violation of a pretrial order that the area where officers stopped Issa "is infested with gangs and gang members."

**¶21**　　　　Issa filed a pretrial motion to preclude officers from testifying they were assigned to a gang unit and that the area of the traffic stop was known to be inhabited by a gang and to experience gang-related crimes, on the ground Issa was not a gang member and evidence relating to gangs would not be relevant.  The court ruled officers would be allowed to identify "their training and their assignments, going up through what their current assignment is," and could be questioned as to "whether there was any evidence of gang affiliation by the defendant or anything that tipped them off that this would be related to a gang incident."  The court ruled, however, that,

> [a]s to the area of patrol, the officers are to be instructed to just refer to the geographic boundaries and not a description of this as a high crime area because that's not relevant to the type of charge that the defendant is defending against in this case, so just the geographic boundaries of their area of patrol . . .

> high crime and all of those issues, those are not relevant either
> to the charges against the defendant.

**¶22**          On direct examination during the second day of trial, however, a detective volunteered that as he approached Issa's vehicle, he was keeping an eye on him

> as well as any other individuals that are in close proximity to
> us based on there is a lot of violence that occurs in that area.
> It is infested with gangs and gang members and stuff like that.
> So my duty is to kind of keep an eye on the individual and the
> vehicle, as well as the surrounding individuals in that parking
> lot.

At a recess soon after, defense counsel moved for a mistrial on the ground that the court had precluded any reference to the area "as being a high crime area and lots of gang activities."  The court denied the motion for mistrial but invited defense counsel to suggest "any other sort of remedy."  Defense counsel asked only "that it not be referred to again."

**¶23**          A declaration of mistrial is "the most dramatic remedy for trial error and should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted."  *State v. Dann*, 205 Ariz. 557, 570, ¶ 43 (2003).  In determining whether to grant a mistrial, a judge should consider whether the testimony called the jurors' attention to matters that they would not be justified in considering in reaching a verdict and the probability under the circumstances that the testimony influenced the jurors.  *State v. Bailey*, 160 Ariz. 277, 279 (1989).  We review a court's denial of mistrial for abuse of discretion.  *State v. Jones*, 197 Ariz. 290, 304, ¶ 32 (2000).

**¶24**          The court did not abuse its discretion.  As an initial matter, the pretrial order on the motion *in limine* permitted the officers to testify about their assignment to the gang unit and their training and experience as gang detectives, and permitted reference in closing argument to this experience.  As for the testimony given in violation of the pretrial ruling, the court was in the best position to determine whether the reference to the area as a high crime area infested with gang members would have influenced the jurors.  *See Jones*, 197 Ariz. at 304, ¶ 32.  We cannot say the court abused its discretion in concluding that the single brief reference would have influenced the jury. Moreover, defense counsel eliminated any possible prejudice by eliciting testimony on cross-examination of the

detective that the charge against Issa did not "have anything to do with gangs."

## CONCLUSION

¶25      For the foregoing reasons, we affirm Issa's conviction and sentence.



AMY M. WOOD • Clerk of the Court
FILED:   AA