ECKERSTROM, Chief Judge, dissenting:
¶ 19 In evaluating what a defendant must show to secure disclosure in practice, we must be mindful that a finding of "reasonable possibility" does not itself result in disclosure of the victim's medical and counseling records. Such a finding triggers only an in camera inspection by the judge: a professional who possesses a solemn duty to protect the confidentiality of those materials. See Ariz. R. Sup. Ct. 81, Ariz. Code of Judicial Conduct 3.5 ("A judge shall not intentionally disclose ... nonpublic information acquired in a judicial capacity for any purpose unrelated to the judge's judicial duties.").
¶ 20 In tension with the victim's interest in preventing the inspection of those records by a lone judge stands the defendant's right to due process, protected by the Fifth and Sixth Amendments to the Constitution, to collect and present all exculpatory evidence in his favor. See Roper , 172 Ariz. at 236, 836 P.2d at 449 (when defendant's due process right to present a complete defense directly conflicts with Victims' Bill of Rights, "due process is the superior right").[6] Thus, while the defendant's access to exculpatory information stands central to the reliability and fairness of a criminal trial, the victim's interest in the privacy of her medical and counseling records is substantially protected by the threshold requirement of in camera review.
¶ 21 Our courts have resolved this asymmetry by setting forth a comparatively relaxed standard for compelling in camera review: the defendant need only show a "reasonable possibility" such evidence might be found in the requested documents. Sarullo , 219 Ariz. 431, ¶ 20, 199 P.3d 686 (quoting Connor , 215 Ariz. 553, ¶ 10, 161 P.3d 596 ).
¶ 22 Although litigants may dispute what constitutes a "reasonable possibility" of discovering relevant information, that standard, *1211 as my colleagues correctly observe, necessarily requires more than speculation on the part of the requesting party. Accordingly, when a defendant's request amounts to "mere conjecture without more that certain information might be useful as exculpatory evidence," a trial court properly refuses to compel disclosure. State v. Hatton , 116 Ariz. 142, 150, 568 P.2d 1040, 1048 (1977) (request for police reports of criminal activity over year-long period in hope of finding alternate suspect a "fishing expedition").
¶ 23 On the other hand, almost all disclosure requests, including well-founded ones, involve some measure of speculation: without possession of the requested documents, no litigant can be certain what information they will contain. This is presumably why our rules and jurisprudence refer to the process of seeking information as "discovery" and "disclosure." See, e.g. , Rule 15.1 ; cf. Ariz. R. Civ. P. 26 (governing civil discovery). Thus, a "reasonable possibility" that documents may contain exculpatory evidence stands on a spectrum between abject conjecture and certainty.
¶ 24 But the "reasonable possibility" standard gives us more guidance than that. Semantically, a "reasonable possibility" does not require a showing that relevant evidence will probably be discovered: a possibility is logically something less than a probability. Thus, the distinction between a disclosure request based on speculation and one that is anchored in a reasonable possibility turns on whether a reasoned basis supports the request-and not whether the requesting party can establish it is likely that any relevant information will be found. See Sarullo , 219 Ariz. 431, ¶ 21, 199 P.3d 686.
¶ 25 Under that standard, I can only conclude that Kellywood-a man who faced lifetime imprisonment and whose guilt on most counts depended largely on the credibility of A.K.-provided a reasoned basis to believe exculpatory evidence could possibly be found within A.K.'s medical and counseling records. In his motion and argument for disclosure, he either expressly asserted or logically implied that (1) medical providers for an adolescent girl might reasonably be expected to ask A.K. about her level of sexual activity and (2) counselors for a recently adopted child might reasonably be expected to inquire about the nature of her relationship with her adoptive father.[7] Kellywood further deduced that any responses provided by A.K. to such queries would necessarily be exculpatory because (1) no counselor or physician had officially reported any allegation of sexual relations between Kellywood and A.K. and (2) they would have been legally required to do so as a matter of law. See A.R.S. § 13-3620(A)(1). To further increase the possibility that his request would target exculpatory information, Kellywood narrowed his request to those counseling sessions or doctors' appointments bounded by the timeframe during which A.K. claimed the crimes were ongoing.
¶ 26 In my view, the above demonstrates a reasoned basis, beyond mere conjecture, to believe that A.K.'s medical and counseling records might plausibly contain exculpatory information. This is all that is required for a defendant facing felony charges and who seeks only in camera review.
¶ 27 My colleagues maintain that allowing such review here would necessarily require disclosure whenever a defendant "merely articulates some plausible reason" the requested materials might contain exculpatory evidence. But if that "plausible reason" truly establishes a possibility based in sound logic that the materials could contain exculpatory information, then limited disclosure by in camera review is precisely what our legal standard requires.
¶ 28 The majority warns that the due process exception would swallow § 2.1(A)(5) of the Victims' Bill of Rights if we applied it here because it would compel such review "in *1212 virtually any case" when the defense is fabrication. But, in so concluding, my colleagues overlook the unique features of this case. Here, we address disclosure in the context of allegations of persistent sexual assault over a period of years during which the victim saw medical and counseling providers on numerous occasions.
¶ 29 By contrast, we can envision a multitude of circumstances in which in camera review may not be appropriate: when, by contrast, the alleged crime constituted a single event or occurred within a time period during which the victim saw no providers; when other evidence affirmatively indicates the records will not contain exculpatory information, see, e.g. , Sarullo , 219 Ariz. 431, ¶¶ 19-21, 199 P.3d 686 ; when a victim has made prior inconsistent statements such that the requested information would be cumulative or not material under the Sixth Amendment, see State v. Bracy , 145 Ariz. 520, 528, 703 P.2d 464, 472 (1985) ; when a request pertains to an irrelevant time period; or when records are prepared by a specialist providing irrelevant forms of treatment (e.g., a podiatrist).
¶ 30 I fear the majority's analysis essentially requires Kellywood to demonstrate a substantial probability that A.K.'s records would reveal exculpatory information. Indeed, it implies that a defendant must make a showing equivalent to that provided in Roper and it enumerates the numerous, extraordinary circumstances present in that case. See 172 Ariz. at 234-35, 836 P.2d at 447-48. But the court in Roper did not suggest that the defendant there had narrowly established a reasonable possibility or that the facts of that case made the question close or difficult. Rather, given the defendant's exceptional knowledge about the victim's psychiatric sessions-which came from her personal involvement therein, see id. , it is clear she could have satisfied a burden far exceeding reasonable possibility.
¶ 31 By contrast, in Connor , we rejected the defendant's request for disclosure where he articulated no basis to believe that the deceased victim's medical or psychological records would provide any insight on whether "an intellectually and emotionally challenged young man" had been the original aggressor in his own death. See 215 Ariz. 553, ¶¶ 2, 11, 161 P.3d 596. Nor did the defendant offer any reason to believe the records might contain material necessary to "fully present his justification defense or to the cross-examination of witnesses." Id. ¶ 11. Instead, he sought disclosure of all records so that he could have an expert review them and offer an opinion. Id. ¶ 23. Additionally, that request was beset with other problems: notably, the defendant could not establish the grounds upon which such character evidence, if found, would be admissible. Id. ¶¶ 13, 15, 18. Here, the statements sought by Kellywood would not have been subject to further evidentiary hurdles. They would have been plainly admissible as prior inconsistent statements. See Ariz. R. Evid. 613.
¶ 32 In Sarullo , the facts likewise strongly indicated exculpatory statements would not be found. 219 Ariz. 431, ¶¶ 19-21, 199 P.3d 686. There, as here, the defendant sought inconsistent statements in the counseling records of an assault victim. 219 Ariz. 431, ¶ 21, 199 P.3d 686. But because the victim's account of the incident had remained consistent from immediately after the event through trial, we reasoned there was no basis to believe her records would show otherwise. Id. By contrast, Kellywood identified a concrete basis to believe A.K.'s records might contain exculpatory statements: A.K. would plausibly have been asked about her sexual conduct or her relationship with Kellywood and the absence of any statutorily required notification by her caregivers suggested that any answer could only be exculpatory.
¶ 33 Thus, a finding that Kellywood has established a reasonable possibility can be readily harmonized with those cases where we have previously concluded that a defendant has not cleared that threshold. Further, Connor and Sarullo concretely demonstrate that faithful application of the "reasonable possibility" standard does not require the court to grant in camera review in every case where a defendant seeks the medical and counseling records of an alleged victim.
¶ 34 The majority emphasizes that Kellywood never "identified a medical treatment provider or counselor that saw A.K., or for that matter any specific condition for which A.K. ... was receiving treatment or counseling." But Kellywood did establish that A.K.
*1213 had seen such providers. More granular information, while helpful, is not necessary to establish a reasonable possibility. The critical fact is that A.K. had seen providers; knowing their identity does not make the fact of treatment any more probable. And, although Kellywood did not articulate the specific conditions for which A.K. had obtained treatment, such conditions were not crucial to support Kellywood's basis for believing he might reasonably find exculpatory information.[8] Rather, Kellywood sought questions and answers arising from general screening. Furthermore, we would presume an uncommon degree of communication between a girl and her adoptive father to insist that the father know every feature of the highly sensitive and embarrassing subjects of her medical and counseling appointments.
¶ 35 Kellywood has been accused and convicted of serious, repugnant crimes. And, our state's laws express our society's outrage by reserving some of our most unforgiving punishments of incarceration for those who so victimize children. See A.R.S. § 13-705. Indeed, Kellywood has received a sentence of life imprisonment followed by sixty years in prison for his conviction here. It is for those very reasons that we must be vigilant to provide those charged with the full measure of due process commanded by our federal and state constitutions: to have a fair opportunity to demonstrate that they have not committed such crimes.
¶ 36 Here, both parties concede that Kellywood's offenses allegedly occurred in the presence of no witnesses other than Kellywood and A.K. Thus, the case turned in substantial part on the respective credibility of those two individuals. Indeed, of the six counts on which Kellywood was convicted, five were supported by no direct evidence other than A.K.'s testimony. Under such circumstances, I find it unsettling that Kellywood was denied access to potential evidence that might have borne directly on A.K.'s credibility and could conceivably have generated reasonable doubt about Kellywood's guilt on at least five of the counts. Because, in my view, he has demonstrated a reasonable possibility that A.K.'s medical and counseling records might contain such evidence, I would reverse the trial court, order it to conduct an in camera review of those records and to conduct, if necessary, any other proceedings in accordance with the result of that review.

That interest is especially acute where, as here, a defendant faces life imprisonment if found guilty and where many of the criminal counts turn largely on the credibility of the alleged victim.

These logical intuitions find support in published medical standards. See, e.g. , Preventing, Identifying and Treating Violence and Abuse , AMA Code of Medical Ethics Opinion 8.10, https://www.ama-assn.org/delivering-care/preventing-identifying-treating-violence-abuse (last visited Nov. 21, 2018) (physicians have ethical obligation to "[r]outinely inquire about physical[ and] sexual abuse ... as part of the [patient's] medical history"); Rachel Katzenellenbogen, HEADSS: The "Review of Systems" for Adolescents , 7 AMA J. Ethics 231-33 (2005) (enumerating risks for which medical providers should screen adolescent patients, including unwanted sexual activity and general safety).

Kellywood indicated through trial testimony that A.K.'s counseling sessions were designed to assist her in integrating with her new family-a topic area that might readily prompt discussions about any inappropriate conduct by her adoptive father.